# STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

In re:

Application of Robert Gordon Kidd
To Take Discovery Pursuant To
28 USC § 1782

Civil Action No. 3:20mc16(TOF)

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH
## AND OBJECTIONS TO THE SUBPOENAS AND REQUESTS TO PRODUCE
## DOCUMENTS SERVED UPON JOHN THOMAS REYNOLDS AND MARK MCCALL

John Thomas Reynolds ("Reynolds") and Mark McCall ("McCall") (collectively "Respondents") respectfully submit this Memorandum of Law in support of their Motion to Quash and Objection(s) to the Subpoenas and Requests to Produce Documents served upon them by Applicant Robert Gordon Kidd ("Applicant" or "Kidd").

## I.

## SUMMARY OF MOTION AND OBJECTIONS

This Court must grant Respondents' Motion to Quash and strike Applicant's improper attempt to depose and seek document production from Reynolds and McCall. First, Applicant is inappropriately using Section 1782 to attempt apex-discovery against the officers/directors/principals of the parties that are involving in the "Scottish Proceeding" (as that term is defined by Applicant). Second, the Scottish Proceeding has formal discovery procedures/protocols that are enforceable in the United States pursuant to The Hague Convention. Additionally, Initial Procedure has been agreed in the Scottish Proceeding and it is currently scheduled for a June 23, 2020 hearing on dispositive issues such that only limited discovery from Kidd is currently ongoing; thereby making Applicant's Section 1782 request – at best – premature.

In fact, Kidd has not yet requested any discovery in the Scottish Proceeding but has instead agreed to produce, *inter alia*, the settlement agreement by and between Applicant and the legal professionals that are the subject of the underlying dispute.  Finally, Applicant's Deposition and Document Subpoenas are overly broad, harassing, unduly burdensome, and seek the production of documents and/or materials that should be properly sought from the corporate entities involved in the Scottish Proceeding, not from Reynolds and McCall in their individual capacities.

## II.

### FACTUAL BACKGROUND

Applicant has asserted claims and allegations against numerous parties in the Scottish Proceeding.  (*See* Kidd Memo, pgs. 6-13.)  These parties include Lime Rock Management LLP, Lime Rock Management LP, and Lime Rock V (the "Lime Rock Entities"), as well as certain persons identified/defined by Applicant as the "Lime Rock Individual Defendants."  (*Id.* at pgs. 4-6.)  Applicant makes no claims or allegations against Respondents in the Scottish Proceeding, and the Lime Rock Individual Defendants do not include Reynolds or McCall.  (*Id.* at pg. 5.)

In the Scottish Proceeding, Applicant alleges a scheme involving the below-market-purchase and eventual takeover of a company that he created by certain lawyers at Paull & Williamsons LLP (later Burness Paull LLP) (herein "P&W"), the Lime Rock Entities, the Lime Rock Individual Defendants, and other named defendants.  (*See id.* at pgs. 6-12.)  The Lime Rock Entities and the Lime Rock Individual Defendants deny Kidd's material allegations, contest his causes of action, and further deny his alleged right to recover.  (*See* Declaration of Alexander Garioch, Lime Rock Scottish Counsel, attached hereto as Exhibit A; *see also* a true and correct copy of the Defences filed by the Lime Rock Entities and the Lime Rock Individual Defendants in the Scottish Proceeding, attached as Exhibit A-1.)

The plot – according to Kidd – allegedly culminated at his home in Cyprus, where Applicant executed the underlying transactional documents without reading them and unwittingly ceded control of his former company to the Lime Rock Entities.  (*See* Kidd Memo pgs. 9-10.) Having built an international energy services company that he maintains was valued at more than $200 million, Kidd now claims that he bears no responsibility for not reading the underlying transactional documents and/or that he would not have understood them even if he had tried.  (*See id*. at pgs. 9-10.)  Kidd thus places the entire blame for his transactional haste, and the ultimate poor market performance of his former company, upon the attorneys at P&W, whom he alleges served too many masters in the underlying transaction and thus breached the fiduciary duty they owed to Kidd.  (*See id.* at pgs. 10-12.)

It was an alleged scheme that Applicant contends he only discovered after years of litigation, discovery, and document production in his original lawsuit against P&W; said lawyers having produced certain communications to/from the Lime Rock Entities.  (*See id.* at pgs. 11-12.) Having settled with P&W and entered into a "confidential" settlement agreement that will soon be produced in the Scottish Proceeding, Kidd has turned his attention and blame-shifting to the parties now named in the Scottish Proceeding.

Despite almost ten (10) years passing since the original underlying transaction, and nearly five (5) years passing since the filing of his original lawsuit against P&W, Applicant has asserted no claims or allegations against Reynolds and/or McCall.  Nevertheless, Applicant now maintains that "Respondents Reynolds and McCall have information that is ***critical*** to the Scottish Proceeding…"  (*See id.* at pg. 13 (emphasis added).)

Aside from his blanket allegation, Kidd points to no documents, materials, testimony, or any other tangible evidence supporting the allegation that Respondents possess critical information and that he should be permitted to conduct discovery against them in their individual capacities.

The only reason that Applicant seems to be seeking discovery from Reynolds and McCall is because both are allegedly the officers, principals and/or directors of the Lime Rock Entities. (*See id.* at pgs. 13-16.)  Importantly, each of the Lime Rock entities are separate and distinct legal entities, and Applicant has alleged no facts, nor has he made any argument(s), suggesting that the corporate form of any of the Lime Rock Entities should be ignored and/or disregarded.

Applicant maintains that Reynolds is a principal of Lime Rock V, limited partner in Lime Rock Management LLP, and director of Lime Rock Management, LP.  (*See id.* at pg. 15.) Regardless of the veracity of such allegations, Reynold's does not hide or conceal his affiliation with Lime Rock.  (*See* Declaration of John Thomas Reynolds, attached as Exhibit B.)

Applicant maintains that McCall is a principal of Lime Rock V, officer of Lime Rock Management, LLP, and director of Lime Rock Management LP.  (*See* Kidd Memo at pg. 15.) Much like Reynolds, he does not hide or conceal his affiliation with Lime Rock.  *(See* Declaration of Mark McCall, attached hereto as Exhibit C.)

Although it is undisputed that Reynolds and McCall are both involved in the day-to-day business of the Lime Rock Entities, said involvement does not automatically subject them to Kidd's improper, burdensome, intentionally harassing and frivolous discovery.  Intentionally harassing – at least in part – because Kidd wants Respondents to travel outside the District (*i.e.*, here in Connecticut where they reside and work) to New York City to comply with the subpoenas.

## III.

## THE SCOTTISH PROCEEDING

The Scottish Proceeding is pending in The Court of Session in Scotland.  (*See* Exhibit A.)
It is a Commercial Action and it is thus governed by the Rules of Court for Commercial Actions.
(*See id*.; *see also* Exhibit A-3.)  The Lime Rock Entities and the Lime Rock Individual Defendants
have denied Kidd's material allegations, contest his causes of action, and further deny his alleged
right to recover.  (*See* Exhibits A and A-1.)

Per the applicable rules of the Scottish Court, defences having been lodged and the case
was set down for a Preliminary Hearing, which took place on February 28, 2020.  (*See* Exhibit
A.)  In advance of such hearings the parties are required to try to agree to a Joint Statement of
Issues that will be required to be determined by the Court.  (*Id*.)  Absent agreement on a Joint
Statement, parties are required to lodge their own Statements.  (*Id*.)  In this case, all defenders
agreed on a Joint Statement of Issues.  (*Id*.; *see also* a true and correct copy of the Joint Statement
of Issues lodged by all the Defenders, attached as Exhibit A-5.)  Applicant Kidd, however, did
not try to agree to a Joint Statement of Issues and lodged his own.  *(See* Exhibit A; *see also* a true
and correct copy of the Joint Statement of Issues lodged by Kidd, attached as Exhibit A-6.)

At a Preliminary Hearing the Scottish Court has very wide-ranging powers.  (*See* Exhibit
A.)  These are set out in Chapter 47.11.  (*See id.; see also* a true and correct copy of Chapter 47
of the Rules of the Court of Session, attached as Exhibit A-3.)  In terms of Chapter 47.11 (1) (b)
(iv) & (v) the Court has powers to order discovery.  (*See id.*)

In the Joint Statement of Issues for the Defendants, they identified documents that they
required Kidd to produce.  (*See* Exhibit A.)  These documents included the Settlement Agreement

that was entered into between Kidd and P&W, in Kidd's previous action.  (*See id*.)  They also included the documentation that had been lodged and produced in that court action.  (*See id.*)

Kidd did not identify any documents that he required to be produced by the defendants. (*See id*.)  Given the terms of Chapter 47, if Kidd required documents to be produced he could have raised the issue within his Statement of Issues.  (*See id*.)  Having done so, if the discovery was not agreed, he could have argued for discovery at the Preliminary Hearing.  (*See id*.)  Kidd argued for no discovery at the Preliminary Hearing and requested none in his Statement of Issues. (*See id*.)

It is also instructive to refer to the Guidance on Recovery of Documents in Commercial Actions that has been issued by the Commercial Court.  (*See* Exhibit A; *see also* a true and correct copy of the Guidance, attached as Exhibit A-7.)  The Guidance has had effect since February 4, 2019, and the authors of this Guidance are all judges within the Commercial Court.  (*See Exhibit A*.)  Paragraphs 1 and 2 set out general guidance, and paragraph 8 sets guidance relevant to the approach to be adopted at the Preliminary Hearing.  (*See id; see also* Exhibit A-7.)

At the Preliminary Hearing all parties – including Kidd – agreed to Initial Procedure.  (*See* Exhibit A, ¶ 14.)  The Initial Procedure agreed between the parties was also agreed and adopted by the Scottish Court.  (*Id*.)  This agreed procedure mirrored that set out in the Statement of Issues lodged by the Defendants.  (*Id*.)  This procedure accordingly involves Kidd providing to the Defendants a copy of the Settlement Agreement as well as the other documents identified by the Defendants in their Statement of Issues.  (*Id.*)  It also involves parties being allowed to adjust the terms of their written pleadings for an agreed period of time and a Debate (legal argument) taking place on the three-day period commencing June 23, 2020.  (*Id*.)  A copy of the Court Order from February 28, 2020 is still awaited.  (*Id.*)

Accordingly, at this stage, it has been agreed by the parties that discovery in the Scottish Proceeding is currently limited to the Settlement Agreement between Kidd and P&W, and certain documents/materials already produced in Kidd's underlying lawsuit involving P&W.  (*Id.* at ¶ 15.)

The Debate was fixed on June 23, 2020, as the Defendants suspect the terms of the Settlement Agreement will be such that the Scottish Proceeding will be rendered incompetent (*i.e.*, dismissed).  (*Id.* at ¶ 15.)  The Debate will allow the Defendants to argue this point.  (*Id.*) This intent was identified by the Defendants in their Statement of Issues.  (*Id.; see also* Exhibit A-5.)

If the Scottish Court decides that the terms of the Settlement Agreement <u>do render</u> the Scottish Proceeding incompetent then there will be no need for any other procedure, in particular discovery.  (*Id.* at ¶ 17.)  If the Court decides that the terms of the Settlement Agreement <u>do not render</u> the Scottish Proceeding incompetent, then any required discovery can be discussed / argued at that time under the applicable rules.  (*Id.* at ¶ 18.)

In respect of Discovery, the Scottish Commercial Court has specific Rules and Procedures that the parties must follow and respect.  (*Id.* at ¶ 19.)  Under Chapter 47, the judge may make orders in respect of discovery.  (*Id.*; Exhibit A-3.)  In addition, the detailed rules in Chapter 35 can be applied.  (*Id.*; Exhibit A-4.)  These Rules generally provide that: (i) there is no blanket discovery, what can be recovered must be justified and relevant to the case; (ii) parties should initially discuss and attempt to agree what is relevant for production; (iii) absent agreement these issues can be argued in Court; (iv) the Court is empowered to determine discovery disputes regarding relevance and scope; and (v) the Court will make an order for what can be recovered. (*Id.*)

The Scottish Commercial Court is a sophisticated tribunal that has extensive experience addressing discovery issues in complex commercial disputes. (*Id.* at ¶ 19.) Such issues can also be raised and argued within the Commercial Court at relatively short notice. (*Id.*) The applicable rules are designed to allow for speedy and flexible resolution of disputes under the close supervision of a judge. (*Id.*) Typically, commercial actions are assigned to a judge who thereafter deals with it until conclusion. (*Id.*)

With regard to discovery out of the jurisdiction of the Court, Rule of Court 35.15, in fact, addresses document discovery and Rule of Court 35.11 addresses depositions. (*Id.* at ¶ 20; Exhibit A-4.) This is done by a "Letters of Request," and because the United States is a signatory to The Hague Convention, orders arising from the Scottish Proceeding should be recognized and enforceable within the United States. (*Id.*) This is a routine and normal procedure; it is not cumbersome and/or expensive. (*Id.*) Most important, the Letters of Request allow the Scottish Court to determine what discovery is relevant, necessary, and permissible, given the specific scope of the Scottish Proceeding. (*Id.*)

When the Scottish Court in the Scottish Proceeding determines if/when it is appropriate to conduct discovery, said court will permit the parties to move forward with discovery, said court has long established rules and procedures regarding/related to the proper scope of discovery, said court will narrowly tailor any discovery to the facts/issues, and any orders related to discovery that are issued by the court in the Scottish Proceeding should be recognized by courts in the United States. (*Id.*)

## IV.

## ARGUMENT

### A.    Section 1782 Cannot be Used to Conduct Impermissible Apex-Depositions and/or Document Discovery.

Kidd's Application alleges that Reynolds and McCall should be subject to deposition subpoenas and document requests only because of their alleged leadership roles at the Lime Rock Entities.  It is only because of their respective titles that Applicant maintains that "Respondents Reynolds and McCall have information that is critical to the Scottish Proceeding…"  (Kidd Memo at pg. 13.)  Kidd in fact admits that it is merely their "positions at the relevant Lime Rock entities" that allegedly necessitate their depositions and/or document production.  (*See id.* at pg. 19.)

Kidd makes no attempt to explain the information and/or documents that Respondents allegedly have, he makes no effort to explain why he believes Respondents testimony is critical to the Scottish Proceeding, and Kidd never alleges what he believes Reynolds and/or McCall may contribute to the Scottish Proceeding.  Although Applicant outlines the Lime Rock Entities' alleged corporate structure on pages 13-15 of his Memo, he offers no explanation regarding Reynolds' and/or McCall's alleged connection to – or role in – the Scottish Proceeding.  (*See* Kidd Memo, pgs. 13-16.)

While the scope of discovery in federal courts is presumably broad, it is not boundless.  *See* Fed. R. Civ. P. 26(c)(1).  A court may limit the scope of discovery to protect a party or person from annoyance, undue burden or expense; to avoid duplication or harassment; where discovery sought can be obtained from another source that is more convenient, less burdensome or less expensive; and if a subpoena subjects a non-party to undue burden.  *See* Fed. R. Civ. P. 26(b)(1), (b)(2)(c), (c)(1) & 45(c)(3)(A)(iv).

Courts use a reasonableness standard to determine whether a notice of deposition or subpoena should be quashed. The court should balance the interests served by demanding compliance with the notice against the interests furthered by quashing it and may issue a protective order in appropriate cases. *See* Fed. R. Civ. P. 26(c); *see also* 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2463 (3d ed.). The decision of whether to quash a deposition notice or subpoena is ultimately within the district court's broad discretion. *See Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1999).

Here, Kidd is attempting to use Section 1782 to make an end-run around the federal courts' prohibition against apex depositions and discovery. Importantly, Section 1782 requires that the discovery be taken "in accordance with the Federal Rules of Civil Procedure." 28 USC § 1782. This means that Applicant can point to no support for the proposition that he can ignore the "apex doctrine" when attempting to conduct discovery under Section 1782.

The United States Supreme Court held that in addition to the statutory requirements of 28 U.S.C. § 1782, courts should consider four discretionary factors in that bear on granting discovery. The last factor is "whether the request is unduly burdensome." *In re Intel*, 542 U.S.C. 241, 264 (2004). The Second Circuit has held that "§ 1782 discovery request should assess whether the discovery sought is overly broad or unduly burdensome **by applying the familiar standards of Rule 26** …." *Mess v. Buiter*, 793 F.3d 291, 302 (2d Cir 2015). Therefore, we must look to domestic suits involving apex depositions for guidance.

It has long been recognized that courts should use the "apex doctrine" to bar the deposition of high-level executives unless there is a showing that (i) the executive has unique personal knowledge of the relevant facts or (ii) other less intrusive means to discovery the information have

been exhausted.  *See Lederman v. New York City Dept. of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013).

The District of Connecticut has held that "while there is no per se rule barring depositions of top executives," courts generally do not allow apex depositions unless plaintiffs can show that (a) the same information cannot be obtained from some less intrusive means (*e.g.*, document requests, lower level employee depo, etc.) and (b) that the executive has some unique knowledge pertinent to the case.  *Rodriguez v. SLM Corp.*, 2010 WL 1286969, at *2 (D. Conn. 2010).  These are the same factors that other Second Circuit district courts have applied, and S.D.N.Y. notes that courts routinely grant protective orders for apex depositions.  *Roberts v. Los Alamos Nat'l Security, LLC*, 2015 WL 7444636, at *2 (S.D.N.Y. 2015) (collecting Second Circuit cases).

Unless a corporate official has some unique knowledge of the issues in the case, the court may preclude a deposition of the executive while allowing lower-level employees with the same knowledge to be questioned.  *See Six W. Retail Acquisition v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98, 102 (S.D.N.Y. 2001); *Gen. Star Indem. Co. v. Platinum Indem. Ltd.*, 210 F.R.D. 80, 83 (S.D.N.Y. 2002); *Harris v. Computer Assocs. Int'l*, 204 F.R.D. 44, 46 (E.D.N.Y. 2001); *see also Lin v. Benihana Nat'l Corp.*, No. 10-cv-1335, 2010 WL 4007282, at *2 (S.D.N.Y. Oct. 5, 2010) (finding that the deposition of a high-ranking executive with general knowledge of the corporation's operations must be precluded when the corporation offers for deposition a lower-ranking executive with knowledge of the corporate structure and events at issue).

Applied here, Kidd has made no effort to show that Reynolds or McCall have unique personal knowledge of relevant facts or that he has exhausted less intrusive means to obtain the so-called "critical" information and/or documents.  Kidd has had ten (10) years since the underlying transaction, and five (5) years since he first sued P&W, to investigate the alleged

events, inspect documents, interview witnesses, conduct depositions and/or compel discovery. Despite this passage of time, Kidd's Section 1782 Application and Memo are barren of any facts or support necessitating the apex-discovery that he seeks.

Kidd, in fact, has asserted claims against the two (2) Lime Rock Entities' representatives that he believes to be most closely associated with his alleged claims and injuries. (*See* Kidd Memo, pg. 5.)  Kidd has specifically asserted claims, and he seeks to recover, against Hamish Hector Lawrence Ross ("Ross") and Jason Smith ("Smith"). (*Id.*)  It is the email to/from Ross and P&W that is featured prominently in Kidd's Application and that Kidd maintains supports the claims that he is asserting in the Scottish Proceeding. (*Id.* pgs. 7-8.)  There can be no doubt that if Reynolds and/or McCall appeared in any communications, or if Kidd had had any material communications or negotiations with either Reynolds or McCall, they would also be named in the Scottish Proceeding (or detailed in Kidd's Application and Memo).

The Court should not allow Kidd the opportunity to harass Reynolds and McCall without articulating their relevance to the Scottish Proceeding, nor should he be permitted to depose or subpoena Reynolds and/or McCall before he has conducted any discovery in the Scottish Proceeding against Ross, Smith and/or the Lime Rock Entities.  To this end, Kidd will be permitted to conduct discovery in the Scottish Proceeding if his claims are not dismissed following the June 23, 2020 Debate. (*See* Exhibit A.)  Kidd can return to this Court following the June 23, 2020 Debate, and after he conducts proper non-apex discovery in the Scottish Action; thereby making a proper and/or supported request to conduct the apex-discovery he seeks against Reynolds and/or McCall.  Until then, Kidd's subpoenas to Reynolds and McCall represent improper apex-discovery that must be quashed by the Court.

**B.      The Court Should Not Allow Kidd to Circumvent the Scottish Proceeding, Which Has Only Allowed Limited Discovery Until After the Three (3) Day Debate Scheduled to Begin on June 23, 2020.**

A party is not permitted to rely upon Section 1782 if the attempted discovery request conceals an attempt to get around foreign restrictions on proof-gathering.  *See Intel Corp. vs. Advanced Micro Devices, Inc.*, 542 US 241, 264-65 (2004).  Applied here, there are currently restrictions in place limiting discovery in the Scottish Proceeding.  (*See supra,* Section III.)

The fact that discovery may ultimately be conducted in the Scottish Proceeding is not the relevant inquiry.  There is no dispute regarding the fact that the court in the Scottish Proceeding is permitted to hear and issue Letters of Request upon nonresident third-parties.  (*See* Exhibit A; *see also* Exhibit A-2.)  There is also no dispute regarding the fact that The Hague Convention facilitates nonresident discovery that may be conducted in the Scottish Proceeding and requires that Letters of Request issued by the court in the Scottish Proceeding be recognized in the United States.

The issue presented here is that the parties in the Scottish Proceeding have agreed to place, and the Court has placed, limitations on the discovery that is required before the three (3) day Debate that is scheduled to begin on June 23, 2020.  (*Id.*)  The only discovery that is being conducted in the Scottish Proceeding involves Kidd's production of his settlement agreement with P&W, along with Kidd's production of certain documents/materials that were previously produced in Kidd's initial lawsuit against P&W.  (*Id.*)

At the June 23, 2020 Debate, the defendants are expected to argue, *inter alia*, that grounds exist to dismiss Kidd's claims.  These arguments are expected to include, but not be limited to, the fact that Kidd has already recovered for his alleged injuries against P&W, as well as the fact that Kidd's claims in the Scottish Proceeding are time barred.  (*Id.*; *see also* Exhibit A-1.)  If the court

dismisses Kidd's claims following the June 23, 2020 Debate, document production and depositions will become a moot issue.  (*Id.*)  Alternatively, the court could use the Debate on June 23, 2020 to narrowly tailor the remaining issues in the Scottish Proceeding, which may serve to lessen the discovery burdens on any remaining parties.  (*Id.*)

Bottom line, the parties to the Scottish Proceeding, and the Scottish Court, have agreed on limitations on discovery leading up to the Debate that is scheduled to be conducted beginning on June 23, 2020.  Kidd should be made to comply with these limitations and the Court should not permit Kidd to use Section 1782 to circumvent these limitations and/or pursue discovery that Kidd would not be entitled to presently pursue in the Scottish Proceeding.

The subpoenas issued by Kidd to Reynolds and McCall, therefore, do not satisfy the requirements of *Intel Corp. vs. Advanced Micro Devices, Inc*.  Kidd is clearly trying to use Section 1782 to get around the restrictions on proof-gathering currently in place in the Scottish Proceeding. Because the parties and the Court in the Scottish Proceeding have agreed to limited discovery leading up to the Debate on June 23, 2020, the Court should direct Kidd to apply to the Scottish court for Letters of Request; especially if Kidd has changed his mind now believes he needs discovery in the Scottish Proceeding.  If the Scottish court hears the Letters of Request, grants Kidd's application, and it is served upon Reynolds and/or McCall pursuant to The Hague Convention, the Court will know that Kidd's attempt to conduct discovery complied with the framework established in the Scottish Proceeding.  To do otherwise is to allow Kidd the opportunity to abuse Section 1782, ignore the limitations in the Scottish Proceeding, and serve harassing, burdensome and unnecessary discovery upon Reynolds and McCall.

**C.    Kidd Undermines His Application and Pleads/Admits that Reynolds and McCall are Participants in the Scottish Proceeding.**

Next, the Court must consider whether the discovery target is a participant in the foreign proceeding.  *See Intel Corp. vs. Advanced Micro Devices, Inc.*, 542 US 241, 264-65 (2004).

Although Kidd has not, and cannot, articulate Reynolds' and/or McCall's factual connection to his underlying allegations, Kidd pleads that Reynolds and McCall are "the Corporate Decision Makers" at/for the Lime Rock Entities.  (*See* Kidd Memo, pg. 17-20.)

If Kidd's allegations are accepted as true, and Reynolds and/or McCall are indeed "the Corporate Decision Makers" for the Lime Rock Entities, the Lime Rock Entities must act by and/or through Reynolds and/or McCall.  And if the Lime Rock Entities are allegedly acting by and/or through Reynolds and/or McCall, they must be participating in the Scottish Proceeding.  Kidd cannot maintain that Reynolds and/or McCall are "the Corporate Decision Makers" and at the same time allege that Reynolds and/or McCall are not participating in the Scottish Proceeding.

The fact that Kidd refers to Reynolds and McCall as "the Corporate Decision Makers" reveals Kidd's true intent, which is to pursue discovery from a corporate representative in his individual capacity, which is not the purpose or intent of Section 1782.  The Court must put an end to Kidd's gamesmanship and quash the subpoenas.  The Court should send Kidd back to the Scottish Proceeding to conduct the corporate-representative-discovery that he seeks.

**D.    The Subpoenas Were Not Properly Served.**

The subpoenas were not properly served upon Reynolds and McCall.  First, neither Reynolds nor McCall were tendered a witness fee or an estimated mileage expense to travel from

their homes in the District – *i.e.*, Connecticut – to New York City[1].  Absent the witness fee(s), the subpoenas have not been properly served and must be quashed.

Additionally, neither Reynolds nor McCall have been served with the purported document subpoenas.  Each were only served with the deposition subpoena that is on file with the Court, not the subpoena to produce documents that Applicant also purported to serve.  Respondents cannot be compelled to produce any documents, or attend a deposition, unless or until the Applicant properly serves the subpoenas at issue.

> **E.**   **Kidd's Discovery Requests to Respondents are Unduly Burdensome, Overly Broad, Harassing, and Should be Directed to the Corporate Representatives of the Lime Rock Entities, Not Respondents in Their Individual Capacities.**

Lastly, the Court must determine if Kidd's subpoenas to Reynold and McCall are unduly burdensome.  *See Intel Corp. vs. Advanced Micro Devices, Inc.*, 542 US 241, 264-65 (2004). Having demonstrated that Kidd's subpoenas are an improper and harassing attempt to conduct apex discovery, as well as ignore the current limitations of the Scottish Proceeding (*see supra.*, Sections III & IV), Respondents now offer the following specific Responses and Objections to each of the document requests served by Kidd.

A close examination of each document request demonstrates that Kidd is actually attempting discovery to/from the Lime Rock Entities.  Kidd is attempting to serve discovery on Reynolds and McCall as a conduit for the production of documents and/or materials from (or that belong to) the Lime Rock Entities.   Kidd demands deal/transactional documents, closing documents, engagement agreements with Lime Rock Entities' counsel, communications with Lime Rock Entities counsel, documents regarding and/or related to the Lime Rock Entities

---

[1] The demand that Reynolds and McCall travel into New York City crystalizes the harassing intent of Kidd's subpoenas.  Kidd has sought his Application with the assistance of local counsel, but demands compliance outside of this District.  This gamesmanship demonstrates the true purpose of Kidd's Application, which is to harass and burden Reynolds and McCall.

structure/organization, and investor materials belonging to the Lime Rock Entities. Each of these requests should be directed to the Lime Rock Entities, not Reynolds and/or McCall. The Court, therefore, must quash Kidd's subpoenas and sustain these objections, as follows:

**General Objections:**

Respondents object to the subpoenas requesting production of documents because as worded they seek documents that are not relevant to any party's claim or defense considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and the burden and/or expense. Respondents also object because the subpoenas were not served with a witness fee and are therefore unenforceable. In addition, the requests contained in the subpoenas as worded do not comply with Rule 45(d)(1) of the Federal Rules of Civil Procedure in that they are not reasonably tailored to avoid imposing undue burden and expense, and Respondents hereby state that all of the documents requested are not maintained in their individual capacities. Finally, the Subpoenas seek for Respondents to produce potentially privileged and/or confidential documents belonging to the Lime Rock Entities, which is not required by Rule 45 of the Federal Rules of Civil Procedure. Without waiving these objections Respondents state as follows:

**Specific Objections and Responses to Document Requests:**

**Request No. 1**: For the Pre-Transaction Period, all Documents and Communications concerning Mr. Kidd, ITS, or the Transaction, including but not limited to: (a) Communications sent or received by You concerning the terms and/or negotiation of a potential transaction involving ITS or Mr. Kidd; (b) Communications sent or received by You concerning the value ascribed to ITS by any Person; and (c) all Documents executed by, or on behalf of, You, LRP GP V Inc., LRP GP V LP, or LRM GP LLC in connection with the Transaction.

**Response**:  Objection, this request is overly broad, unduly burdensome, and it is not reasonably tailored to avoid imposing undue burden and expense on Respondents.  Kidd is seeking documents that would be nearly 10 years old, or older.  Kidd is also seeking documents belonging to the Lime Rock Entities and/or documents that Respondents do not maintain in their individual capacities. If Kidd wants discovery from the Lime Rock Entities, he should be made to serve said discovery on the Lime Rock Entities.  A party cannot serve a subpoena on an officer/employee of a company and command said individual to walk into his/her employer and copy documents belonging to (or maintained by) the company/entity.  Because this Request seeks documents belonging to the Lime Rock Entities, and which are not maintained by Respondents in their individual capacities, said Request may seek Lime Rock's privileged and confidential documents/materials/information, which Respondents cannot be made to produce in their individual capacity.  In addition, this Request as worded may be construed to seek documents that are protected from discovery because they are attorney client privileged.  Respondents, in their individual capacities, have no documents to produce in response to this Request.  Respondents, in response to this Request, have no documents and thus this response and objection should not be construed to suggest that the Lime Rock Entities would have responsive documents regarding such subject matter, as the subpoena at issue has not been attempted to be served on the Lime Rock Entities.

**Request No. 2**:   For the Post-Transaction Period, all Documents and Communications concerning the Transaction, including but not limited to: (a) Communications sent or received by You concerning the terms of the Transaction; and (b) Communications sent or received by You concerning the gain or loss to Lime Rock V on account of the Transaction.

**Response**: Objection, this request is overly broad, unduly burdensome, and it is not reasonably tailored to avoid imposing undue burden and expense on Respondents.  Kidd is seeking

documents that would be nearly 10 years old.  Kidd is also seeking documents belonging to the

Lime Rock Entities and/or documents that Respondents do not maintain in their individual

capacities.  If Kidd wants discovery from the Lime Rock Entities he should be made to serve said

discovery on the Lime Rock Entities.  A party cannot serve a subpoena on an officer/employee

of a company and command said individual to walk into his/her employer and copy documents

belonging to (or maintained by) the company/entity.  Because this Request seeks documents

belonging to the Lime Rock Entities, and which are not maintained by Respondents in their

individual capacities, said Request may seek Lime Rock's privileged and confidential

documents/materials/information, which Respondents cannot be made to produce in their

individual capacity.  In addition, this request as worded may be construed to seek documents that

are protected from discovery because they are attorney client privileged.  Respondents, in their

individual capacities, have no documents to produce in response to this Request.  Respondents,

in response to this Request, have no documents and thus this response and objection should not

be construed to suggest that the Lime Rock Entities would have responsive documents regarding

such subject matter, as the subpoena at issue has not been attempted to be served on the Lime

Rock Entities.

**Request No. 3**:  All Documents and Communications concerning or evidencing the role of P&W

in connection with the Transaction, including but not limited to Communications concerning the

Transaction between or copied to You, on the one hand, and Mr. Gordon or Mr. Allan, on the other

hand.

**Response**:  Objection, this request is overly broad, unduly burdensome, and it is not reasonably

tailored to avoid imposing undue burden and expense on Respondents. Kidd is seeking documents

that would be nearly 10 years old, or older.  Kidd is also seeking documents belonging to the Lime

Rock Entities and/or documents that Respondents do not maintain in their individual capacities. If Kidd wants discovery from the Lime Rock Entities he should be made to serve said discovery on the Lime Rock Entities.  A party cannot serve a subpoena on an officer/employee of a company and command said individual to walk into his/her employer and copy documents belonging to (or maintained by) the company/entity.  Because this Request seeks documents belonging to the Lime Rock Entities, and which are not maintained by Respondents in their individual capacities, said Request may seek Lime Rock's privileged and confidential documents/materials/information, which Respondents cannot be made to produce in their individual capacity.   In addition, this request as worded may be construed to seek documents that are protected from discovery because they are attorney client privileged.  Respondents, in their individual capacities, have no documents to produce in response to this Request.   Respondents, in response to this Request, have no documents and thus this response and objection should not be construed to suggest that the Lime Rock Entities would have responsive documents regarding such subject matter, as the subpoena at issue has not been attempted to be served on the Lime Rock Entities

**Request No. 4**:  All Documents and Communications concerning or evidencing any actual, potential, or perceived conflict in the role of P&W or Ledingham Chalmers in connection with the Transaction, including but not limited to Communications between or copied to You, on the one hand, and Mr. Gordon or Mr. Allan, on the other hand.

**Response**:  Objection, this request is overly broad, unduly burdensome, and it is not reasonably tailored to avoid imposing undue burden and expense on Respondents. Kidd is seeking documents that would be nearly 10 years old, or older.  Kidd is also seeking documents belonging to the Lime Rock Entities and/or documents that Respondents do not maintain in their individual capacities. If Kidd wants discovery from the Lime Rock Entities he should be made to serve said discovery

on the Lime Rock Entities.  A party cannot serve a subpoena on an officer/employee of a company and command said individual to walk into his/her employer and copy documents belonging to (or maintained by) the company/entity.  Because this Request seeks documents belonging to the Lime Rock Entities, and which are not maintained by Respondents in their individual capacities, said Request may seek Lime Rock's privileged and confidential documents/materials/information, which Respondents cannot be made to produce in their individual capacity.  In addition, this request as worded may be construed to seek documents that are protected from discovery because they are attorney client privileged.  Respondents, in their individual capacities, have no documents to produce in response to this Request.  Respondents, in response to this Request, have no documents and thus this response and objection should not be construed to suggest that the Lime Rock Entities would have responsive documents regarding such subject matter, as the subpoena at issue has not been attempted to be served on the Lime Rock Entities.

**Request No. 5**: All Documents and Communications concerning or evidencing the official or unofficial control structure for each of Lime Rock V, LRP GP V LP, LRP GP V Inc., including but not limited to: (i) lists of officers and directors and/or general partners including the officers and directors of any general partners; (ii) corporate organizational charts; (iii) limited partnership agreements or by-laws or similar governing agreements or corporate organizational documents; (iv) investment management or similar advisory or sub-advisory agreements; (v) offering memoranda or prospectuses; and (vi) powers of attorney.

**Response**:  Objection, this request is overly broad, unduly burdensome, and it is not reasonably tailored to avoid imposing undue burden and expense on Respondents. Kidd is clearly seeking documents belonging to the Lime Rock Entities and/or documents that Respondents do not maintain in their individual capacities.  If Kidd wants discovery from the Lime Rock Entities he

should be made to serve said discovery on the Lime Rock Entities.  This request demonstrates the truly improper nature of Kidd's fishing expedition and harassing nature of Kidd's discovery attempt.  A party cannot serve a subpoena on an officer/employee of a company and command said individual to walk into his/her employer and copy documents belonging to (or maintained by) the company/entity.  Because this Request seeks documents belonging to the Lime Rock Entities, and which are not maintained by Respondents in their individual capacities, said Request may seek Lime Rock's privileged and confidential documents/materials/information, which Respondents cannot be made to produce in their individual capacity.  In addition, this request as worded may be construed to seek documents that are protected from discovery because they are attorney client privileged.  Respondents, in their individual capacities, have no documents to produce in response to this Request.  Respondents, in response to this Request, have no documents and thus this response and objection should not be construed to suggest that the Lime Rock Entities would have responsive documents regarding such subject matter, as the subpoena at issue has not been attempted to be served on the Lime Rock Entities.

**Request No. 6**: All Documents and Communications concerning or evidencing the official or unofficial control structure for each of LRM LLP, LRM GP LLC, LRM UK One Limited, and LRM UK Two Limited, including but not limited to: (i) lists of employees, agents, members, officers, and directors; (ii) corporate organizational charts; (iii) limited partnership agreements, memorandum, and articles of association, or similar governing agreements or corporate organizational documents; (iv) offering memoranda or prospectuses; and (v) powers of attorney.

**Response**:  Objection, this request is overly broad, unduly burdensome, and it is not reasonably tailored to avoid imposing undue burden and expense on Respondents. Kidd is seeking documents belonging to the Lime Rock Entities and/or documents that Respondents do not maintain in their

individual capacities.  Kidd is serving domestic discovery on Respondents in an attempt to obtain documents from UK companies/entities, which is entirely improper.  If Kidd wants discovery from the Lime Rock Entities he should be made to serve said discovery on the Lime Rock Entities.  A party cannot serve a subpoena on an officer/employee of a company and command said individual to walk into his/her employer and copy documents belonging to (or maintained by) the company/entity.  Because this Request seeks documents belonging to the Lime Rock Entities, and which are not maintained by Respondents in their individual capacities, said Request may seek Lime Rock's privileged and confidential documents/materials/information, which Respondents cannot be made to produce in their individual capacity.  In addition, this request as worded may be construed to seek documents that are protected from discovery because they are attorney client privileged.  Respondents, in their individual capacities, have no documents to produce in response to this Request.  Respondents, in response to this Request, have no documents and thus this response and objection should not be construed to suggest that the Lime Rock Entities would have responsive documents regarding such subject matter, as the subpoena at issue has not been attempted to be served on the Lime Rock Entities.

**Request No. 7**:  All Documents and Communications concerning or evidencing the official or unofficial control structure for LRM LP, including but not limited to: (i) lists of general partners and the officers and directors of its general partners; (ii) corporate organizational charts; (iii) limited partnership agreements or similar governing agreements or corporate organizational documents; (iv) offering memoranda or prospectuses; and (v) powers of attorney.

**Response**:  Objection, this request is overly broad, unduly burdensome, and it is not reasonably tailored to avoid imposing undue burden and expense on Respondents. Kidd is also seeking documents belonging to the Lime Rock Entities and/or documents that Respondents do not

maintain in their individual capacities.  If Kidd wants discovery from the Lime Rock Entities he should be made to serve said discovery on the Lime Rock Entities.  A party cannot serve a subpoena on an officer/employee of a company and command said individual to walk into his/her employer and copy documents belonging to (or maintained by) the company/entity.  Because this Request seeks documents belonging to the Lime Rock Entities, and which are not maintained by Respondents in their individual capacities, said Request may seek Lime Rock's privileged and confidential documents/materials/information, which Respondents cannot be made to produce in their individual capacity.  In addition, this request as worded may be construed to seek documents that are protected from discovery because they are attorney client privileged.  Respondents, in their individual capacities, have no documents to produce in response to this Request.  Respondents, in response to this Request, have no documents and thus this response and objection should not be construed to suggest that the Lime Rock Entities would have responsive documents regarding such subject matter, as the subpoena at issue has not been attempted to be served on the Lime Rock Entities.

**Request No. 8**:  All Documents and Communications provided to investors and/or prospective investors in Lime Rock V concerning Mr. Kidd or the Transaction.

**Response**:  Objection, this request is overly broad, unduly burdensome, and it is not reasonably tailored to avoid imposing undue burden and expense on Respondents. Kidd is seeking documents that would be nearly 10 years old, or older.  Kidd is also seeking documents belonging to the Lime Rock Entities and/or documents that Respondents do not maintain in their individual capacities.  If Kidd wants discovery from the Lime Rock Entities he should be made to serve said discovery on the Lime Rock Entities.  A party cannot serve a subpoena on an officer/employee of a company and command said individual to walk into his/her employer and copy documents

belonging to (or maintained by) the company/entity.  Because this Request seeks documents belonging to the Lime Rock Entities, and which are not maintained by Respondents in their individual capacities, said Request may seek Lime Rock's privileged and confidential documents/materials/information, which Respondents cannot be made to produce in their individual capacity.  In addition, this request as worded may be construed to seek documents that are protected from discovery because they are attorney client privileged.  Respondents, in their individual capacities, have no documents to produce in response to this Request.  Respondents, in response to this Request, have no documents and thus this response and objection should not be construed to suggest that the Lime Rock Entities would have responsive documents regarding such subject matter, as the subpoena at issue has not been attempted to be served on the Lime Rock Entities.

## V.

## CONCLUSION

WHEREFORE, Respondents respectfully request that this Court Quash the subpoenas to conduct depositions and produce documents that have been served (or attempted to be served) on Reynolds and McCall, and such other and further relief, both at law and in equity, as the Court may award.

Dated:  March 20, 2020                           GREENBERG TRAURIG, LLP

By: */s/ Toby S. Soli*
   Toby S. Soli
   Fed. Bar No. ct-18697
   445 Hamilton Avenue
   White Plains, NY 10601
   Telephone:  212-801-9200
   Facsimile:  212-801-6400
   Email: solit@gtlaw.com
   *Attorneys for Respondents*

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2020, a true and correct copy of the foregoing document was electronically filed with the Court and that counsel of record who are deemed to have consented to electronic service are being served via the Court's CM/ECF system.

*/s/ Toby S. Soli*
Toby S. Soli