## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

IN RE:

APPLICATION OF ROBERT GORDON KIDD
FOR AN ORDER UNDER 28 U.S.C. § 1782 TO
TAKE DISCOVERY FROM JOHN THOMAS
REYNOLDS AND MARK MCCALL

**Civil Action No. 3:20-MC-16 (TOF)**

## MEMORANDUM IN OPPOSITION TO MOTION TO QUASH
## AND OBJECTIONS TO THE SUBPOENAS AND REQUESTS TO PRODUCE
## <u>DOCUMENTS SERVED UPON JOHN THOMAS REYNOLDS AND MARK MCCALL</u>

BERCHEM MOSES PC
75 Broad Street
Milford, CT 06460
Tel:  +1 203 783 1200

KOBRE & KIM LLP
800 Third Avenue
New York, NY 10022
Tel: +1 212 488 1200

*Attorneys for Robert Gordon Kidd*

*Oral Argument Requested*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .....................................................................................................1

BACKGROUND ........................................................................................................................3

I.     The Scottish Proceeding .................................................................................................3

II.    The Court's Granting of the 1782 Application ...................................................................5

III.   Service of the Subpoenas ...............................................................................................5

ARGUMENT ............................................................................................................................6

I.     Respondents Are Not Participants in the Scottish Proceeding And, Therefore, the
First *Intel* Factor Weighs in Favor of Mr. Kidd.................................................................6

II.    Respondents Concede that the Second *Intel* Factor Weighs in Favor of Mr. Kidd ...........8

III.   Mr. Kidd is Not Seeking to Circumvent Scottish Proof-Gathering Restrictions
And, Therefore, the Third *Intel* Factor Weighs in Favor of Mr. Kidd...............................9

IV.   The Proposed Depositions Are Not Unduly Burdensome And, Therefore, the
Fourth *Intel* Factor Weighs in Favor of Requiring Respondents to Appear for
Depositions ................................................................................................................14

V.    The Proposed Document Requests Are Not Unduly Burdensome And, Therefore,
the Fourth *Intel* Factor Weighs In Favor of Requiring Respondents to Produce...............23

VI.   The Subpoenas Were Properly Served ..........................................................................27

CONCLUSION .......................................................................................................................28

APPENDIX A .................................................................................................................... A-1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.,*
    798 F.3d 113 (2d Cir. 2015) ................................................................. 11

*Chamberlain v. Farmington Sav. Bank,*
    247 F.R.D. 288 (D. Conn. 2007) ......................................................... 23

*Chevron Corp. v. Donziger,*
    2013 WL 1896932 (S.D.N.Y. May 7, 2013) ....................................... 16

*Dietrich v. Bauer,*
    2000 WL 1171132 (S.D.N.Y. Aug. 16, 2000) .................................... 23

*First City, Texas-Houston, N.A. v. Rafidain Bank,*
    197 F.R.D. 250 (S.D.N.Y.2000) .......................................................... 27

*HT S.R.L. v. Velasco,*
    125 F. Supp. 3d 211 (D.D.C. 2015) .................................................... 11

*In re Application for an Order Permitting Metallgesellschaft AG to take Discovery,*
    121 F.3d 77 (2d Cir. 1997) ...........................................................*Passim*

*In re Application of Hill,*
    2007 WL 1226141 (S.D.N.Y. Apr. 23, 2007) ....................................... 9

*In re Consellior SAS, Kerfraval, Ass'n De Documentation Pour L'industrie Nationale,*
    13 MC 34, 2013 WL 5517925 (D. Conn. Oct. 2, 2013) ............... 7, 26, A-2

*In re Flag Telecom Holdings, Ltd. Sec. Litig.,*
    236 F.R.D. 177 (S.D.N.Y. 2006) ............................................ 3, 23, 25, A-5

*In re Gemeinschaftspraxis Dr. Med. Schotldorf,*
    2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) ...................................... 9

*In re Rule 45 Subpoena Issued to Robert K. Kochan,*
    2007 WL 4208555 (E.D.N.C. Nov. 26, 2007) ............................... 24, A-5

*In re Shur,*
    184 B.R. 640 (Bankr. E.D.N.Y. 1995) ................................................ 27

*Infinite Energy, Inc. v. Thai Heng Chang,*
    2008 WL 11320142 (N.D. Ga. May 30, 2008) .............................. 23, A-5

*Intel Corp. v. Advanced Micro Devices, Inc.*,
 542 U.S. 241 (2004) .................................................................................*Passim*

*Investment Properties Int'l, Ltd. v. IOS, Ltd.*,
 459 F.2d 705 (2d Cir. 1972) ................................................................... 16

*Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*,
 841 F. Supp. 2d 769 (S.D.N.Y. 2012) ................................................... 12

*Lin v. Benihana Nat'l Corp.*,
 2010 WL 4007282 (S.D.N.Y. Oct. 5, 2010) .......................................... 22

*Mees v. Buiter*,
 793 F.3d 291 (2d Cir. 2015) ........................................................ 13, A-5

*Naftchi v. New York University Medical Center*,
 172 F.R.D. 130 (S.D.N.Y. 1997) ........................................................... 16

*Rodriguez v. SLM Corp.*,
 2010 WL 1286989 (D. Conn. Mar. 26, 2010) .................................. 15, 17

*Six W. Retail Acquisition v. Sony Theatre Mgmt. Corp.*,
 203 F.R.D. 98 (S.D.N.Y. 2001) ............................................................. 17

*United States v. Int'l Bus. Machines Corp.*,
 71 F.R.D. 88 (S.D.N.Y. 1976) ..................................................... 23, A-5

*Weber v. FujiFilm Med. Sys. U.S.A., Inc.*,
 2011 WL 677278 (D. Conn. Jan. 24, 2011) ........................................... 18

*WhitServe LLC v. Computer Packages, Inc.*,
 2013 WL 6169280 (D. Conn. Nov. 22, 2013) ..................................... 3, 27

**Statutes**

5 U.S.C. § 5704 ....................................................................................... 28

28 U.S.C. § 1782 ...............................................................................*Passim*

28 U.S.C. § 1821 ..................................................................................... 28

**Rules**

D. Conn. Local Rule 37(b)(1) ......................................................... 26, A-4

Federal Rule 26(c) .................................................................................. 23

Federal Rule 45 ...................................................................................... 14, 23, 25, A-2

Robert Gordon Kidd respectfully submits this memorandum in opposition to the *Motion to Quash and Objections to the Subpoenas and Requests to Produce Documents Served Upon John Thomas Reynolds and Mark McCall* (ECF No. 9) (the "Motion") and the *Memorandum of Law* in support thereof (the "Resp't Brief") filed by John Thomas Reynolds and Mark McCall (together, the "Respondents").

## PRELIMINARY STATEMENT

In its *Ruling on Petition for Discovery Pursuant to 28 U.S.C. § 1782* (ECF No. 6) (the "1782 Ruling"), the Court correctly determined that all three of the statutory requirements for the granting of an application under 28 U.S.C. § 1782 have been met.  That determination is not in dispute.

Instead, Respondents contest the Court's finding that the four discretionary factors established by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004) weigh in favor of granting Mr. Kidd discovery in this matter.  Respondents additionally raise certain technical objections to service of the subpoenas.  Respondents' arguments do not withstand scrutiny.

*First*, Respondents are not "participants" in the Scottish proceeding.  The purpose of the "participant" factor of the *Intel* analysis is to assess whether the persons from whom discovery is sought are subject to the jurisdictional reach of the foreign court.  If they are, there is less need for a U.S. court to order discovery of those persons.  *Intel*, 542 U.S. at 264.  Here, Respondents are not parties to the Scottish proceeding and have not consented to the jurisdiction of the Scottish court.  As such, the first *Intel* factor weighs in favor of Mr. Kidd.  This Court has already held as much, *see* ECF No. 6 at 4, and Respondents offer no compelling reason to disturb that holding.

*Second*, Respondents do not contest Mr. Kidd's evidence—and the Court's finding—that the Scottish court would be receptive to the requested discovery.  As such, Respondents have conceded that the second *Intel* factor weighs in favor of Mr. Kidd.

*Third*, by seeking discovery from Respondents, Mr. Kidd is not seeking to circumvent foreign proof-gathering restrictions.  Contrary to Respondents' assertions, no agreement or procedure in the Scottish proceeding restricts Mr. Kidd's ability to seek discovery from Respondents via Section 1782.  Further, Respondents ignore precedent from the Court of Appeals for the Second Circuit when they assert that this Court should direct Mr. Kidd to first apply for discovery from Respondents via a "Letter of Request" to ensure that any U.S. discovery complies "with the framework established in the Scottish Proceeding." (Resp't Br. at 14.)  Indeed, according to the Second Circuit, requiring a litigant to pursue discovery abroad before seeking such discovery under Section 1782 "finds no support in the plain language of the statute and runs counter to its express purposes."  *In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997).

*Fourth*, neither the deposition subpoenas nor the document subpoenas are unduly burdensome.  As set forth below, the apex-discovery doctrine has no applicability where, as here, Respondents have been selected as witnesses, in part, given their extensive familiarity with holding companies and/or special purposes entities with few or no employees of their own.  For such entities, there are no lower-level employees that can serve as appropriate witnesses.  But even if the apex-discovery doctrine were to apply, the requirements for the deposition of an apex-witness have been met.  Further, Respondents' primary argument in support of the alleged burden of the document subpoenas has no basis in law; case law is clear that corporate officers in "control" of responsive documents are required to produce them, even when those documents are not

maintained by the corporate officers in an individual capacity. *See, e.g.*, *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 180-81 (S.D.N.Y. 2006).

Finally, Respondents' technical objections to service of the subpoenas also fail. For example, as evidenced by affidavits of service submitted herewith, both the deposition subpoenas and document subpoenas were duly served on Respondents. Further, there is no reason to quash the deposition subpoenas on the basis that witness and estimated mileage fees were not provided at the time of service given that such fees have since been tendered. *See WhitServe LLC v. Computer Packages, Inc.*, No. 3:06CV1935 AVC, 2013 WL 6169280, at *3 (D. Conn. Nov. 22, 2013).

Because each of the *Intel* factors weighs in favor of Mr. Kidd and the subpoenas were properly served, each Respondent is required to produce responsive documents and appear for a deposition. Nevertheless, Mr. Kidd is mindful of the ongoing and devastating impact of the current COVID-19 pandemic and, under the circumstances, Mr. Kidd is amenable to delaying the depositions of Respondents. Although the depositions can be postponed, the document productions should proceed, as they can take place by electronic means.

For all the foregoing reasons, and those set forth below, Mr. Kidd respectfully requests that the Court deny the Motion.

## BACKGROUND

**I.    The Scottish Proceeding**[1]

In November 2019, Mr. Kidd commenced a proceeding in Scotland's Court of Session (the "Scottish Proceeding") against a number of defendants (or "defenders" in Scottish terminology),

---

[1] Additional detail concerning the Scottish Proceeding, including the claims asserted therein and their bases, can be found in Mr. Kidd's *Memorandum of Law in Support of the Application of Robert Gordon Kidd for an Order Under 28 U.S.C. § 1782 to Take Discovery from John Thomas Reynolds and Mark McCall* (ECF No. 1-1) (the "Memorandum

including Lime Rock Partners V, LP ("Lime Rock V"), a private equity fund affiliated with various entities doing business across the globe as "Lime Rock" (collectively, "Lime Rock").  Mr. Kidd's claims in the Scottish Proceeding arise from his sale of a minority interest in ITS Tubular Services (Holdings) Limited ("ITS") to Lime Rock V as part of a transaction that was plagued by misconduct (the "Transaction").  Unbeknownst to Mr. Kidd, the attorneys who represented him and ITS in the Transaction, Paull & Williamsons LLP ("P&W"), were tainted by egregious conflicts of interest.  P&W subsequently admitted that it had acted in breach of its fiduciary duty to Mr. Kidd and its contract with Mr. Kidd during the course of the Transaction.

Lime Rock V was not only aware of P&W's conflict of interest, and subsequent breach of duty to Mr. Kidd, but as alleged in the Scottish Proceeding, Lime Rock V and certain affiliated entities and individuals conspired with P&W to actively facilitate that breach for Lime Rock's benefit.  The result of this conspiracy was that Mr. Kidd was never properly advised regarding the complicated structure of the Transaction.  That structure placed Lime Rock V in a more favorable position in respect of its minority interest in ITS than Mr. Kidd in respect of his majority interest in ITS.

The defenders in the Scottish Proceeding include (in addition to Lime Rock V): Lime Rock Management LP ("LRM LP"); Lime Rock Management LLP ("LRM LLP"); Hamish Hector Lawrence Ross and Jason Smith, who were employees and/or agents of one or more of the foregoing entities; Ledingham Chalmers LLP, Lime Rock's appointed counsel in connection with the Transaction; and Malcolm Laing and Rodney Alphonsious Magill Hutchinson, practicing solicitors at Ledingham Chalmers LLP.  Each of these entities and individuals had a direct and

---

of Law in Support of 1782 Application") and in the Summons that commenced the Scottish Action, which is attached as Exhibit 3 to the Declaration of Michael S. Kim (ECF No. 1-4).

significant role in the unlawful conspiracy and, together, they caused Mr. Kidd to suffer damages in excess of U.S. $210 million.

## II.      The Court's Granting of the 1782 Application

On February 20, 2020, pursuant to 28 U.S.C. § 1782 ("Section 1782"), Mr. Kidd filed an application seeking authority to serve Respondents with discovery for use in the Scottish Proceeding (ECF No. 1) (the "1782 Application").

On February 28, 2020, the Court issued its 1782 Ruling.  The Court determined that, based on the record before it, all of the statutory requirements of Section 1782 were satisfied.  *Id*. at 4. The Court further determined that each of the *Intel* factors weighed in favor of granting the 1782 Application.  Specifically, the Court held that:

> First, Mr. Reynolds and Mr. McCall are not participants in the foreign proceedings and are outside the Scottish court's jurisdictional reach. (Pet.'s Memo. of Law ¶ 60; Michael Kim Decl. ¶¶ 4, 10.) Second, there appears to be no legal barrier to the use of the requested discovery in Scottish courts. (Pet.'s Memo. of Law ¶¶ 61-64; David Kerr Decl. ¶ 11.) Third, Kidd's request does not appear to conceal an attempt to circumvent foreign evidence-gathering rules. (Pet.'s Memo. of Law ¶¶ 65-68; David Kerr Decl. ¶ 12.)  Finally, the requests do not appear to be overly burdensome or intrusive.

## III.      Service of the Subpoenas

Consistent with the authority granted by the Court in its 1782 Ruling, on March 7, 2020, Thomas A Lyons, a State Marshall for Fairfield County, served the subpoenas upon Respondents as follows:

1. a subpoena to produce documents and a subpoena to testify at a deposition were served upon Mr. Reynolds at his usual place of abode in this district; and

2. a subpoena to produce documents and a subpoena to testify at a deposition were served upon Mr. McCall at his usual place of abode in this district.

Mr. Lyons' Affidavits of Service are attached, along with copies of the subpoenas to Mr. Reynolds and Mr. McCall (each, a "Subpoena" and collectively, the "Subpoenas"), as Exhibit A and

Exhibit B, respectively, to the Declaration of Adam M. Lavine, dated April 10, 2020, filed herewith (the "Lavine Declaration").

The Subpoenas sought the production of documents from Respondents by April 3, 2020, and attendance at a deposition on April 28, 2020 for Mr. Reynolds and April 29, 2020 for Mr. McCall.  Respondents failed to produce any documents by the April 3, 2020 deadline and have instead filed their Motion.

## ARGUMENT

As the Court properly found in connection with the 1782 Application, and as discussed below, each of the *Intel* factors weighs in favor of enforcement of the Subpoenas, which were properly served.

### I.    Respondents Are Not Participants in the Scottish Proceeding And, Therefore, the First *Intel* Factor Weighs in Favor of Mr. Kidd

Respondents argue that, by alleging Mr. Reynolds and Mr. McCall were the "Corporate Decision Makers" for the Lime Rock entities named as defenders in the Scottish Proceeding, Mr. Kidd admits that Mr. Reynolds and Mr. McCall are "participants" in the Scottish Proceeding. (Resp't Br. at 15 ("[I]f the Lime Rock Entities are allegedly acting by and/or through Reynolds and/or McCall, they must be participating in the Scottish Proceeding.").)  This argument fails for a number of independent reasons.

First, the true extent of Respondents' control over the Lime Rock defenders in Scotland has not been established by any court or conceded by any party.  Indeed, Mr. Kidd's discovery is aimed, in part, at uncovering the import of Respondents' various positions across the Lime Rock structure, including whether Respondents' titles on paper matched their roles in practice in connection with the Transaction.  *See, e.g.*, Lavine Decl., Ex. A at Document Requests 5-7.  In the interim, it should be noted that Mr. Kidd does not allege, as suggested by Respondents, that

Respondents are the "Corporate Decision Makers" for defenders in the Scottish Proceeding.  Mr. Kidd alleges that Respondents "served (or serve) as officers, directors, or indirect controlling parties" of the "Corporate Decision Makers"—a term defined to include non-defenders Lime Rock Partners GP V, LP ("LRP GP V, LP") and LRP GP V, Inc. as well as defenders LRM LP and LRM LLP.  (*See* ECF No. 1-1, ¶ 49.)

Second, even if defenders Lime Rock V, LRM LP, and LRM LLP are controlled by Respondents, this does not make Respondents "participants" in the Scottish Proceeding for purposes of the Section 1782 analysis.  Indeed, in *In re Consellior SAS, Kerfraval, Ass'n De Documentation Pour L'industrie Nationale*, No. 13 MC 34, 2013 WL 5517925, at *2 (D. Conn. Oct. 2, 2013), the U.S. District Court for the District of Connecticut granted Section 1782 discovery from the controlling shareholders of the foreign defendant.  The District Court's ruling in *Consellior* is consistent with the Supreme Court's instruction in *Intel*.  In *Intel*, the Supreme Court directed courts to consider whether the person from whom discovery is sought is a "participant" in the foreign proceeding because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Intel*, 542 U.S. at 264.  In such circumstances, the need for U.S. discovery is lessened.  *Id*.

In this case, Respondents have not appeared before the Scottish court and have not consented to the Scottish court's jurisdiction.  *See* Second Kerr Decl. ¶ 14.  To the contrary, Respondents argue that any discovery from them in Scotland should be obtained through the Hague Convention—a process that necessarily invokes the jurisdiction of the U.S. courts.  (Resp't Br. at 12-14).  Under these circumstances, *Intel* is clear that Respondents are not "participants" in the foreign proceeding and that this factor weighs in favor of Mr. Kidd.  *Intel*, 542 U.S. at 264 ("[N]onparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional

reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.").

Third, Respondents' arguments ignore the fact that Mr. Kidd seeks discovery from Respondents, in part, because of their positions at non-defenders LRP GP V, LP and LRP GP V, Inc.  It cannot be said that Respondents are participating in the Scottish Proceeding through LRP GP V, LP and LRP GP V, Inc. given that these entities are not themselves participating in the Scottish Proceeding.  *See* Second Kerr Decl. ¶ 13.  Indeed, these entities are located in the Cayman Islands and, therefore, the ability of the Scottish court to order discovery from them is limited.  *Id.*; *see also* Lavine Decl., Ex. C and D.

For each of the foregoing reasons, Respondents fail in their attempt to characterize themselves as "participants" in the Scottish Proceeding.  Accordingly, the first *Intel* factor weighs in favor of Mr. Kidd.

## II.    Respondents Concede that the Second *Intel* Factor Weighs in Favor of Mr. Kidd

In connection with the 1782 Application, Mr. Kidd submitted the Declaration of David Kerr.  (*See* ECF No. 1-2 (the "First Kerr Declaration")).  Mr. Kerr is a solicitor at Harper Macleod LLP, the firm representing Mr. Kidd in connection with the Scottish Proceeding.  In the First Kerr Declaration, Mr. Kerr stated that he was "not aware of any decision in the Scottish courts suggesting that documents or testimony obtained by [the 1782 Application] could not be used in the Scottish Proceeding."  (*Id.* at ¶ 11).[2]  Based, in part, upon such testimony, the Court concluded in its 1782 Ruling that "there appears to be no legal barrier to the use of the requested discovery in Scottish courts."  ECF No. 6 at 4.

---

[2] For the Court's convenience, and to limit the number of separate documents to which the Court may wish to consult in ruling on the Motion, Mr. Kerr has reiterated in the Second Kerr Declaration, filed contemporaneously herewith, each of the points he previously made in the First Kerr Declaration.

Respondents do not contest the Court's finding that the Scottish court would be receptive to the use of documents and testimony obtained abroad via Section 1782. Indeed, the declaration submitted by Scottish counsel for Lime Rock is silent as to this point. (*See generally* ECF No. 9-2). As such, Respondents have conceded that the second *Intel* factor weighs in favor of Mr. Kidd.

**III. Mr. Kidd is Not Seeking to Circumvent Scottish Proof-Gathering Restrictions And, Therefore, the Third *Intel* Factor Weighs in Favor of Mr. Kidd**

When courts analyze the circumvention prong of the *Intel* analysis, they often assess whether the discovery is sought in bad faith. *See In re Application of Hill*, No. M19-117 (RJH), 2007 WL 1226141, at *3 (S.D.N.Y. Apr. 23, 2007) ("Absent any indication of bad faith on [the applicant's] part, the Court is simply unwilling to weigh the request for § 1782 assistance itself as a negative discretionary factor.") (internal quotation marks omitted) (citing *In re Gemeinschaftspraxis Dr. Med. Schotldorf*, No. M19-88 (BJS), 2006 WL 3844464, at *7 (S.D.N.Y. Dec. 29, 2006)). The discovery sought in the Subpoenas is a critical component of marshalling the proof needed for Mr. Kidd to succeed on his claims. *See* Second Kerr Decl. ¶ 10; *see also* ECF No. 1-1, ¶ 66. As such, the discovery is sought in good faith and Respondents have not argued otherwise.[3]

Respondents argue that Mr. Kidd is attempting to circumvent Scottish proof-gathering restrictions as evidenced by Mr. Kidd's seeking discovery from Respondents while certain purported discovery limitations have already been agreed in Scotland. (Resp't Br. at 1, 13-14.) Respondents additionally assert that Mr. Kidd should be directed to take discovery from Respondents by submitting Letters of Request under the Hague Convention. *Id.* These arguments are devoid of merit. As set out below, Respondents mischaracterize the current procedural posture

---

[3] Although Respondents claim that the Subpoenas are overly broad, harassing, and unduly burdensome, Respondents do not argue bad faith. Further, Respondents' claims of overbreadth, undue burden, and harassment fail as discussed in Sections IV and V below.

of the Scottish Proceeding, and they ignore binding precedent from the Court of Appeals for the Second Circuit.

### A.     Nothing in the Scottish Proceeding Restricts Mr. Kidd from Seeking the Requested Discovery, And Such Discovery Is Not Premature

No agreement in Scotland restricts Mr. Kidd's ability to seek discovery from Respondents via Section 1782.  *See* Second Kerr Decl. ¶¶ 15-16.  Consistent with Scottish law and procedure, the parties to the Scottish Proceeding attended a "Preliminary Hearing" on February 20, 2020.  *Id*. ¶ 16.  At the "Preliminary Hearing", a "Debate" was scheduled for June 23 to 25, 2020, at which the parties will present legal argument to the Scottish court as to whether or not Mr. Kidd's claims in the Scottish Proceeding are precluded as a matter of law as a result of an earlier settlement agreement between Mr. Kidd and parties who are not parties to the Scottish Proceeding or this case.  *Id*. ¶ 17.  Contrary to Respondents' suggestion, Mr. Kidd did not agree at the "Preliminary Hearing" that he would refrain from seeking discovery, whether in Scotland or abroad.  *Id*. ¶¶ 15-16.

As further evidence of the intent of the parties to the Scottish Proceeding, consider that the filing of the 1782 Application occurred prior to the "Preliminary Hearing" and that Mr. Kidd's Scottish counsel at the "Preliminary Hearing" had actively assisted in the preparation of the 1782 Application.  *Id*. ¶ 16.  Knowing that he was already seeking discovery in the U.S. from Respondents, Mr. Kidd never would have agreed to restrict such discovery at the "Preliminary Hearing."  *Id*.  Rather, Mr. Kidd's intent was, and is, to conduct discovery pursuant to Section 1782 in the U.S., while simultaneously advancing the Scottish Proceeding in accordance with applicable Scottish procedure.

The Scottish rules and guidelines cited by Respondents, *see* Resp't Br. at 7-8, do not prohibit Mr. Kidd from proceeding in this fashion. *Id*. ¶ 18.  Those rules and guidelines govern

10

procedures for discovery in commercial actions before the Scottish Commercial Court. *Id.*; *see also* Garioch Decl., Ex. A-3 at § 47.1 ("This Chapter applies to a 'commercial action'"); Ex. A-4 at § 35.1 ("This Chapter applies to the recovery of any evidence in a cause depending before the court"); Ex. A-7 (outlining the expectations of parties where they are seeking documents . . . "in commercial actions" before the Court of Session). They do not apply to the Subpoenas to Respondents, which are governed by Section 1782 and the Federal Rules. *See* Second Kerr Decl. ¶ 18.

Further, the issuance of the Subpoenas is not premature. Second Circuit precedent makes clear that Section 1782 discovery may be employed at various stages of the foreign proceeding, including before the proceeding is even commenced. *See Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 123 (2d Cir. 2015) (noting that a 1782 application may seek discovery in support of a foreign proceeding that has not yet commenced if the planned proceeding is "within reasonable contemplation."). In fact, district courts have expressed a preference for litigants to bring 1782 applications early in the foreign proceeding. *See HT S.R.L. v. Velasco*, 125 F. Supp. 3d 211, 223-24 (D.D.C. 2015) (Noting positively that "Petitioner here has not delayed in seeking discovery under 28 U.S.C. § 1782(a)" and that "Petitioner is proactively and efficiently using its time to seek discovery.").

In this case, there is no reason for delaying the discovery currently sought from Respondents. Among other things, such discovery is expected to reveal critical factual background about the official and unofficial control structures between and among Lime Rock's complicated web of corporate entities. It is also expected to reveal the identities of Lime Rock individuals that did—or did not—have a role in the Transaction, and the extent to which such individuals had knowledge of P&W's conflict of interest. This critical information can be used in the foreign

proceeding, not only in support of Mr. Kidd's claims, but also to narrow the discovery sought there from the defenders. *See* Second Kerr Decl. ¶ 11.

This information can also be used by Mr. Kidd to amend the claims asserted, if he is so advised by his Scottish lawyers. *Id.* Within Scottish proceedings, there is a specific period of time, known as "adjustment", set aside for the parties to introduce amendments to their pleaded claims, for example, based on refinements of law or additional factual assertions. *Id.* In the Scottish Proceeding, Mr. Kidd's three-week period of adjustment opens on April 10, 2020. *Id.* Accordingly, Respondents are wrong to argue that the Subpoenas are premature, as now is precisely the timeliest moment for such evidence gathering. *Id.* ¶¶ 11, 17. As such, obtaining the requested information now would be beneficial to the progression and ultimate resolution of the Scottish Proceeding. *Id.* Indeed, as noted by Mr. Kerr in his Declaration,

> It is both prudent and in the interests of justice for Mr. Kidd to utilize the period of adjustment to address all matters - not just those which are the subject of the Debate, but also those which may come to light through discovery. It would be inappropriate for Mr. Kidd not to utilize this time to prepare for procedure to follow on from success in the Debate, but instead to sit on his hands awaiting the outcome before progressing discovery. To do so would risk introducing delay to any procedure to follow the Debate.

*Id*. ¶ 17.

### B.   Respondents' Argument that Mr. Kidd Can and Should Pursue Letters of Request in Scotland Is Contrary to Established Second Circuit Precedent

Respondents suggest that Mr. Kidd's failure to seek Letters of Request[4] from the Scottish court evidences an intent to circumvent foreign proof-gathering restrictions. (Resp't Br. at 1, 14.) This argument also fails.

---

[4] A Letter of Request is simply a "document issued by one court to a foreign court[.]" *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 841 F. Supp. 2d 769, 775 (S.D.N.Y. 2012) (quoting *Black's Law Dictionary* 778 (9th ed. Abridged 2009)).

The Court of Appeals for the Second Circuit has made clear that a foreign litigant may proceed under Section 1782 in lieu of seeking the same discovery via a Letter of Request from the foreign court.  *Metallgesellschaft,* 121 F.3d at 77, 79 (rejecting any "quasi-exhaustion requirement").  According to the Second Circuit, requiring a litigant to pursue discovery abroad before seeking such discovery under Section 1782 "finds no support in the plain language of the statute and runs counter to its express purposes." *Metallgesellschaft*, 121 F.3d at 79.  This is because the "text of Section 1782 authorizes district courts to order discovery not only upon '[a letter rogatory issued] . . . by a foreign tribunal' but also 'upon the application of any interested person.'" *Mees v. Buiter*, 793 F.3d 291, 303–04 (2d Cir. 2015).  In other words, if approval from the foreign tribunal was required to take discovery under Section 1782, there would be no reason for the statute to be written in the disjunctive—permitting discovery to commence either upon a "letter rogatory" from the foreign court <u>or</u> upon the direct request of a private litigant.[5]  Given that Mr. Kidd is not obligated to pursue his discovery via a Letter of Request, his failure to do so cannot weigh in favor of a finding that Mr. Kidd is seeking to circumvent Scottish proof-gathering restrictions.  *See Mees*, 793 F.3d at 304.

Further, this Court should reject Respondents' invitation to direct Mr. Kidd to apply for Letters of Request to the Scottish court as a means of ensuring that any U.S. discovery complies "with the framework established in the Scottish Proceeding."  (Resp't Br. at 14).   In *Metallgesellschaft*, 121 F.3d at 79, the Second Circuit criticized the district court for doing precisely what Respondents request here: deferring to a foreign court's judgement as to the appropriateness of discovery requested under Section 1782.  Specifically, in *Metallgesellschaft*, the Second Circuit held that the district court abused its discretion in finding that "this kind of

---

[5] Section 1782 uses the term "letter rogatory," which is another term for Letter of Request.

discovery would not be afforded at this juncture" by the foreign court and that "it is better to have these discovery issues come up on the 18th of April in the German court and be decided by the German court." *Id*. In so holding, the Second Circuit reiterated the longstanding rule that there is no "requirement that evidence sought in the United States pursuant to § 1782(a) be discoverable under the laws of the foreign country that is the locus of the underlying proceeding." *Id*.

In sum, the Second Circuit has instructed district courts not to defer to foreign procedures, or the preferences of foreign courts, when it comes to ordering discovery under Section 1782, and there is no reason for this Court to deviate from such instructions.

## IV.   The Proposed Depositions Are Not Unduly Burdensome And, Therefore, the Fourth *Intel* Factor Weighs in Favor of Requiring Respondents to Appear for Depositions

### A.   There Is Nothing Improper In Requiring Respondents to Appear for a Deposition Within 100 Miles of Their Residence and Place of Business

Respondents assert that it is unduly burdensome for Mr. Kidd to have scheduled the depositions to take place at the offices of Mr. Kidd's counsel in New York City. It is undisputed, however, that New York City is within 100 miles of each Respondents' residence and place of business. In fact, Lime Rock's office in Westport is less than 50 miles from the office of Mr. Kidd's counsel in New York City. *See* Lavine Decl., Ex. E. As such, the deposition subpoenas comply with Federal Rule 45(c)(1), which expressly permits depositions to occur "within 100 miles of where the person resides, is employed, or regularly transacts business." Respondents cite no authority to support their argument that it is unduly burdensome to schedule a deposition within the geographical limits authorized by the Federal Rules.

Nevertheless, Mr. Kidd acknowledges the ongoing and devastating impact of the current COVID-19 pandemic, including in New York City. Under the circumstances, Mr. Kidd is amenable to delaying the depositions of Respondents.

### B.    The Apex-Discovery Doctrine Does Not Apply to Respondents

The apex-discovery doctrine arises in contexts where high-ranking corporate and governmental officials (sometimes referred to as "apex witnesses") are excused from appearing for a deposition because lesser-ranking individuals within the corporation or government, with the same relevant knowledge, have already been deposed or are available for a deposition. *See, e.g.*, *Rodriguez v. SLM Corp.*, No. CIV3:07CV1866WWE, 2010 WL 1286989, at *2 (D. Conn. Mar. 26, 2010) ("The Court finds that plaintiffs have not demonstrated that Moehn or Goulding possess any information that could not be obtained from lower level employees or other sources."). Respondents claim that the apex-discovery rule applies to them given their senior status at the "Lime Rock Entities" (defined to include defenders Lime Rock V, LRM LP, and LRM LLP). (*See* Resp't Br. at 9.) In making this argument, however, Respondents ignore a number of relevant entities in the Lime Rock corporate group for which Respondents can provide competent testimony, including the following non-defenders: LRP GP V, LP; LRP GP V, Inc.; LRM UK Two Ltd.; and LRM UK One Ltd. (the "Non-Defenders"). Respondents have (or had) roles at each of these Non-Defenders, and the Non-Defenders were unquestionably involved in the Transaction. *See infra*. at Section V.

The apex-discovery rule cannot apply to Respondents in connection with testimony regarding the Non-Defenders. Unlike a government or large corporation with a highly-tiered management structure comprised of many employees, the Non-Defenders are holding companies and/or special purpose entities with few or no employees.[6] Indeed, Respondents appear to concede that even they are not employed by these entities when they note only that they are employed by

---

[6] The same is true of defender Lime Rock V, which, as an investment fund, operates by and through its general partner—a Non-Defender—and primarily relies on investment management services for which it contracts from others. *See* Lavine Decl., Ex. K at 1, 7, 58-60.

LRM LP.  *See* ECF No. 9-4, 9-5.  Given the limited number of employees at the Non-Defenders, Mr. Kidd's options for deposing individuals with knowledge about these entities is limited, and Respondents have not offered any replacement witnesses.  Moreover, it is telling that Respondents do not attempt to identify lesser-ranking employees at the Non-Defenders.  The apex-discovery doctrine does not exist in a factual vacuum; it presupposes that, as a matter of fact, the subpoena recipient is standing at the apex of a real personnel structure.  Respondents have failed to make any such showing, and their argument therefore fails.

In sum, Respondents cannot use the apex-discovery doctrine to avoid their obligation to testify regarding the Non-Defenders given that lesser-ranking individuals at these entities have not been identified and likely do not exist.  Under the circumstances, Respondents' imprecise and flawed argument that Respondents' are senior officials at the "Lime Rock Entities" is insufficient to overcome Respondents' burden to quash the deposition subpoenas.  *See Chevron Corp. v. Donziger*, No. 11 CIV. 0691 LAK JCF, 2013 WL 1896932, at *1 (S.D.N.Y. May 7, 2013) ("[I]t is important to excuse a witness from giving testimony only in compelling circumstances", even in circumstances where that witness is a high-ranking corporate official.); *Naftchi v. New York University Medical Center,* 172 F.R.D. 130, 132 (S.D.N.Y. 1997) ("[I]t is exceedingly difficult to demonstrate an appropriate basis for an order barring the taking of a deposition"); *see also Investment Properties Int'l, Ltd. v. IOS, Ltd.,* 459 F.2d 705, 708 (2d Cir. 1972) ("an order to vacate a notice of taking [of a deposition] is generally regarded as both unusual and unfavorable . . .").

### C.   Even if the Apex-Discovery Doctrine Applied, All Requirements of that Doctrine Would Be Satisfied Based upon the Facts and Circumstances of this Case

Even if the apex-discovery doctrine were to apply (which it does not), Mr. Kidd would be entitled to take the depositions of Mr. Reynolds and Mr. McCall.  Indeed, "[h]ighly-placed executives are not immune from discovery, and the fact that an executive has a busy schedule

cannot shield that witness from being deposed." *Six W. Retail Acquisition v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98, 102 (S.D.N.Y. 2001) (internal quotation marks omitted).  Furthermore, even where "a high-ranking corporate officer denies personal knowledge of the issues at hand, this claim is subject to testing by the examining party." *Six W. Retail,* 203 F.R.D. at 102 (internal quotation marks omitted).

As noted by Respondents, courts will sometimes restrict depositions of high-ranking executives if: (i) the executive has no unique personal knowledge of the relevant facts; and (ii) other less intrusive means to discover the information are available.  *See Rodriguez*, 2010 WL 1286989, at *2.  However, neither circumstance is present here, as set forth below.

### i.    Respondents Have Unique Personal Knowledge Concerning the Requested Information

As set out in the 1782 Application and as reflected in the Subpoenas, Mr. Kidd seeks from Respondents information concerning the official or unofficial control structures and chain of command between and among various Lime Rock entities, and their directors and officers, at the time of the Transaction.  *See, e.g.*, Lavine Decl., Ex. A at Document Requests 5-7.  This information is critical to issues that have arisen and others that may arise in Scotland, *see* Second Kerr Decl. ¶ 10, and such information will put into context, and assist in an analysis of, other critical information the document requests seek from Respondents, including: (1) the extent to which, and the points in time that, the Corporate Decision Makers, and their directors and officers, were directly or indirectly aware of P&W's undisclosed conflict; (2) the extent to which the Corporate Decision Makers, and their directors and officers, facilitated the Transaction despite their awareness of the conflict; and (3) the extent to which the Corporate Decision Makers authorized closing of the Transaction while having knowledge of the conflict.  *See, e.g.*, Lavine Decl., Ex. A at

Document Requests 1-4.  Each of these three items speaks directly to critical factual issues in the Scottish Proceeding.  *See* Second Kerr Decl. ¶ 10.

Respondents do not deny that they knew of the conflict of interest at P&W at the time of the Transaction, and Respondents do not deny that they have information concerning the Lime Rock corporate structure and chain of command.  Instead, Respondents argue merely that Mr. Kidd has not established Respondents' unique personal knowledge of these topics.  (Resp't Br. at 11-12.)  Respondents are wrong.

It cannot be disputed that Respondents have unique knowledge about the nature and extent of their own involvement in the Transaction and their own knowledge (or lack thereof) of P&W's conflict of interest.  Such unique information is critical to this case because any knowledge by Respondents concerning P&W's conflict of interest can potentially be imputed to multiple Lime Rock entities, including one or more of the Lime Rock defenders in the Scottish Proceeding.  *See* Second Kerr Decl. ¶ 10.  Having such unique personal knowledge is sufficient to overcome the apex-discovery doctrine.  *See Weber v. FujiFilm Med. Sys. U.S.A., Inc.*, No. 3:10-CV-401-JBA, 2011 WL 677278, at *2 (D. Conn. Jan. 24, 2011) (holding that corporate executives had "unique knowledge about the nature and extent of their own involvement," and that of other senior leaders, in the act that purported to give rise to liability).

Further, Respondents are uniquely positioned to provide information concerning the official or unofficial control structures and chain of command at Lime Rock.  This is because they hold senior roles at nearly every Lime Rock corporate entity relevant to the Transaction.  Those roles are

discussed in detail in Paragraphs 40-49 of the Memorandum in Support of the 1782 Application, and are summarized in the corporate organizational charts shown below.[7]

Figure 1 displays Respondents' connections to Lime Rock V, the purchaser of Mr. Kidd's shares in ITS in connection with the Transaction.



---

[7] These corporate organizational charts were included in the Memorandum of Law in Support of 1782 Application (ECF No. 1-1), and Respondents do not appear to dispute their accuracy.  Evidentiary support for the corporate organizational charts can be found at Exs. 5-19 attached to the Declaration of Michael S. Kim (ECF No. 1-4).

Figure 2 displays Respondents' connections to the Lime Rock entities that advised Lime Rock V in connection with the Transaction.



Respondents' statements that Mr. Kidd is targeting Respondents "only because of their alleged leadership roles at the Lime Rock Entities" and "only because of their respective titles" reflects, at best, a misunderstanding of Mr. Kidd's argument in the 1782 Application or, at worst, a calculated disregard for the corporate formalities required by Cayman Islands law and Lime Rock V's own governing documents.  (Resp't Br. at 9.)  For example, as explained in the Memorandum in Support of the 1782 Application, the Transaction could not have occurred but for the approval of Lime Rock V's general partner, LRP GP V, LP (acting by its general partner LRP GP V, Inc.).  *See* ECF No. 1-1, ¶ 43 (noting that, under Cayman Islands law, an exempt limited partnership can act only by its general partner); *see also* Declaration of Rebecca Hume (ECF No. 1-3).  Moreover, under the terms of Lime Rock V's Limited Partnership Agreement, all decisions relating to the selection and disposition of Lime Rock V's investments, including the Transaction, were required to be

made exclusively by LRP GP V, LP, and in turn its general partner, LRP GP V, Inc.  *See* Lavine

Decl., Ex. K at § 2.1; *see also* ECF No. 1-1, ¶ 43.  Mr. Reynolds served as one of the two Directors

of LRP GP V, Inc. and Mr. McCall served as Secretary and CFO of LRP GP V, Inc.  *See* Lavine

Decl., Ex. L at 2.  Mr. Kidd does not cite to Respondents' titles at LRP GP V, Inc. merely to suggest

that they are "in leadership roles."  He cites to their titles because those titles evidence that, under

Cayman Islands law and Lime Rock V's own governing documents, Reynolds and McCall should

have been involved in the Transaction in a decision-making capacity, and in a way that other Lime

Rock employees were not.

For all the foregoing reasons, Respondents have unique personal knowledge regarding the

information sought in the Subpoenas.

### ii. Mr. Kidd Has Selected the Least Intrusive, and Most Efficient, Means of Obtaining Available Information

Multiple Lime Rock entities had a role in the Transaction.  The entities involved included,

at a minimum, the Scottish defenders—Lime Rock V, LRM LP, LRM LLP—as well as non-

defenders LRP GP V, LP and LRP GP V, Inc., which are located in the Cayman Islands.  *See* ECF

No. 1-1, ¶¶ 40-44.  Respondents served (or serve) as officers, directors, or indirect controlling

parties of these entities, and were thus also involved in the Transaction.  *See infra.* at Section V.

Respondents do not argue otherwise.

Mr. Kidd selected Respondents for depositions given their ubiquitous presence at Lime

Rock, including with respect to each of the above-mentioned entities.  Indeed, because of their

multiple roles at Lime Rock, they should have access to information that cuts across multiple

corporate entities involved in the Transaction.  As such, deposing these individuals is an efficient

approach, and certainly more efficient than seeking depositions from a corporate representative for

each of the many Lime Rock entities involved.

Respondents argue that Mr. Kidd has failed to pursue means of obtaining information that are less intrusive than depositions of Respondents. (Resp't Br. at 11). Specifically, Respondents propose that Mr. Kidd pursue discovery of Mr. Ross and Mr. Smith in Scotland before proceeding with depositions of Respondents. (*Id.* at 12). However, the Second Circuit has made clear that, in the context of discovery under Section 1782, there is no requirement that an applicant first seek discovery abroad. *See supra* Section III.B. (discussing *In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997)).

Furthermore, as lower-ranking Lime Rock employees based in the U.K., Mr. Ross and Mr. Smith are not in a position to provide the same information and level of detail as Respondents concerning the official or unofficial control structures and chain of command between and among the various Lime Rock corporate entities, and their directors and officers, across the globe.[8]  In addition, Mr. Ross and Mr. Smith cannot speak to the same issues as Respondents given that they do not hold roles at all of the same entities. For example, Mr. Ross and Mr. Smith are not directors and officers of the Cayman Corporate Decision Makers—*i.e.*, LRP GP V, LP and LRP GP V, Inc. Because Mr. Ross and Mr. Smith are not directors and officers of these entities, and given that these entities are not defenders in the Scottish Proceeding, discovery in the Scottish Proceeding will not yield competent testimony about the Cayman Corporate Decision Makers' knowledge of the P&W conflict of interest or involvement in the Transaction.[9]

---

[8] *Lin v. Benihana Nat'l Corp.*, No. 10-cv-1335, 2010 WL 4007282, at *2 (S.D.N.Y. Oct. 5, 2010), which is cited by Respondents for the proposition that lower-level employees may give testimony about corporate structures, is distinguishable. In *Lin*, the defendant offered a substitute witness that could speak to the same exact issues as the executive who was to be deposed, and the plaintiff failed to explain why the substitute witness's testimony would be insufficient. In this case, Respondents have not offered a substitute witness for examination. Respondents suggest that discovery could be sought in Scotland from Mr. Ross and Mr. Smith, but as explained herein, Respondents have unique knowledge of relevant information.

[9] Mr. Kidd's options for securing direct testimony from the Cayman Corporate Decision Makers is limited given that they are not present in the U.S. or Scotland. *See* Second Kerr Decl. ¶ 13.

In light of the all of the foregoing, and given that Respondents have not offered any alternative witnesses as corporate representatives for the Cayman Corporate Decision Makers, or any other Lime Rock entity, depositions of Respondents represent the most efficient means to obtain relevant testimony.

## V.   The Proposed Document Requests Are Not Unduly Burdensome And, Therefore, the Fourth *Intel* Factor Weighs In Favor of Requiring Respondents to Produce

Respondents have the burden to substantiate their claims of undue burden pursuant to Federal Rules 26(c) and 45(c).  *See Chamberlain v. Farmington Sav. Bank*, 247 F.R.D. 288, 290 (D. Conn. 2007) ("The party resisting discovery bears the burden of showing why discovery should be denied").  In an attempt to establish undue burden, Respondents primarily complain that the document requests seek documents that are not maintained by Respondents in their individual capacities.  This argument fails as a matter of law.

Federal Rule 45(a)(1)(iii) provides that a party may serve a subpoena requesting the production of documents or electronically stored information that is in the "possession, custody, or control" of the subpoena recipient.  "'Control' has been construed broadly by the courts as the legal right, authority, or practical ability to obtain the materials sought upon demand." *Dietrich v. Bauer*, No. 95 CIV. 7051 (RWS), 2000 WL 1171132, at *3 (S.D.N.Y. Aug. 16, 2000).  Under this broad construction, multiple courts within the Second Circuit (and other Circuits) have held that employees and/or officers of corporate entities have the "legal right, authority, or practical ability" to obtain documents in the possession of those entities.  *See, e.g.*, *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 180-81 (S.D.N.Y. 2006); *United States v. Int'l Bus. Machines Corp.*, 71 F.R.D. 88, 91 (S.D.N.Y. 1976); *see also Infinite Energy, Inc. v. Thai Heng Chang*, No. 1:07-CV-23-SPM-AK, 2008 WL 11320142, at *7 (N.D. Ga. May 30, 2008); *In re Rule 45*

*Subpoena Issued to Robert K. Kochan*, No. 5:07-MC-44-BR, 2007 WL 4208555, at *4 (E.D.N.C. Nov. 26, 2007).

Applied here, one or both of the Respondents has "control" over documents in the possession of the following corporate entities: Lime Rock V; LRM LP; LRM LLP; LRP GP V, LP; LRP GP V, Inc.; LRM UK Two Ltd.; and LRM UK One Ltd.   The following Figure 3 summarizes: (i) the basis for Respondents' "control" at each entity; and (ii) the evidentiary support for such "control."

| Figure 3 | | | |
|---|---|---|---|
| **Respondent** | **Corporate Entity** | **Basis for "Control"** | **Evidentiary Support** |
| McCall | Lime Rock V | ▪ Principal of Lime Rock V<br>▪ Managing Director of LRM LP, Lime Rock V's "Manager" | ▪ Ex. K at 11<br>▪ Ex. M at Schedule A; Ex. O |
| McCall | LRM LP | ▪ Managing Director & employee of LRM LP | ▪ Ex. M at Schedule A; Ex. O; McCall Decl. at 1 (ECF 9-5) |
| McCall | LRM LLP | ▪ Indirect 100% owner of LRM LLP, through LRM UK One Ltd. and LRM UK Two Ltd. | ▪ Ex. F at 16; *see also* Ex. H; Ex. H; Ex. I; Ex. G at 1 |
| McCall | LRP GP V, LP | ▪ CFO & Secretary of LRP GP V, LP's General Partner, LRP GP V, Inc. | ▪ Ex. L at 2 |
| McCall | LRP GP V, Inc. | ▪ CFO & Secretary of LRP GP V, Inc. | ▪ Ex. L at 2 |
| McCall | LRM UK Two Ltd. | ▪ Indirect 100% owner of LRM UK Two Ltd., through LRM UK One Ltd. | ▪ Ex. H; Ex. I |
| McCall | LRM UK One Ltd. | ▪ 100% owner of LRM UK One Ltd. | ▪ Ex. H |
| Reynolds | Lime Rock V | ▪ Principal of Lime Rock V<br>▪ Managing Director of LRM LP, Lime Rock V's "Manager" | ▪ Ex. K at 11<br>▪ Ex. M at Schedule A; Ex. N |
| Reynolds | LRM LP | ▪ Co-Founder, Managing Director, and employee of LRM LP | ▪ Ex. M at Schedule A; Ex. N; Reynolds Decl. at 1 (ECF 9-4) |

| Reynolds | LRP GP V, LP | ▪ Director of LRP GP V, LP's General Partner, LRP GP V, Inc. | ▪ Ex. L at 2 |
|---|---|---|---|
| Reynolds | LRP GP V, Inc. | ▪ Director of LRP GP V, Inc. | ▪ Ex. L at 2 |

Because the Federal Rules *require* Respondents to produce all responsive documents in their "control," including any documents in the possession of the above-listed entities, Respondents' argument that they do not maintain such documents in their individual capacities has no legal significance.[10]

Respondents' are also wrong when they argue that all responsive documents "belong" to the Lime Rock Entities—*i.e.*, Lime Rock V, LRM LP, and LRM LLP—and should be obtained from them in the Scottish Proceeding.  (Resp't Br. at 15-16).  First, it cannot be the case that responsive documents concerning corporate decision-making and internal affairs at the Non-Defenders "belong" to the Lime Rock Entities, assuming proper corporate formalities between these entities were maintained.  Rather, such documents presumably "belong" to the Non-Defenders and, therefore, directing the document requests to the Lime Rock Entities likely would be insufficient.  Second, ownership of documents is not the relevant inquiry under Federal Rule 45(a).  Rather, the inquiry concerns whether a subpoena recipient is in "possession, custody, or control" of responsive documents. FED. R. CIV. P. 45(a)(1)(iii).  And third, as discussed in Section III.B. above, Section 1782 discovery does not require Mr. Kidd to first seek discovery in Scotland before commencing discovery against Respondents.

---

[10] Similarly, Respondents' statements in their declarations that they "do not have in [their] possession any responsive materials to [Mr.] Kidd's requests that are not the property of [their] employer" are misplaced.  (*See* ECF Nos. 9-4, 9-5.)  As noted, Federal Rule 45 requires Respondents to produce documents in their "possession, custody, *or control*", regardless of whether those documents "belong" to their employer.  *See, e.g., Flag Telecom*, 236 F.R.D. 177, 180-81 (S.D.N.Y. 2006).

In sum, Respondents' arguments concerning undue burden are unpersuasive, and Respondents have therefore failed to show that discovery should be denied.  In contrast, Mr. Kidd has demonstrated—and the Court has previously found—that based on the facts alleged, the document requests are not overly burdensome or intrusive.  *See* ECF No. 6 at 4.  Indeed, there are only eight document requests, and each is narrowly tailored to the Scottish Proceeding.  *See* Lavine Decl. at Exs. A and B.  The requests seek, among other things: (i) documents and communications to or from Respondents regarding ITS, Mr. Kidd, and/or the Transaction; (ii) documents and communications concerning or evidencing the role of P&W and Mr. Gordon in connection with the Transaction; and (iii) documents and communications concerning the official or unofficial control structures at relevant Lime Rock entities.  *Id*.

Although Respondents note that almost ten years have passed since the Transaction, they do not assert that responsive documents are unavailable, or that they would be difficult to access or produce.    Further, any production and confidentiality concerns can be effectively managed between the parties and their counsel.  *See In re Consellior SAS, Kerfraval, Ass'n De Documentation Pour L'industrie Nationale*, No. 13 MC 34, 2013 WL 5517925, at *2 (D. Conn. Oct. 2, 2013) (granting a 1782 application against the controlling shareholders of the defendant in the foreign proceeding, in part, because "the burden of production and any confidentiality concerns can be effectively managed through agreements between the parties or court orders.").

In accordance with Local Rule 37(b)(1), appended hereto as <u>Appendix A</u> is a verbatim listing of the discovery sought and opposed, and the reasons why such discovery should be allowed.  For all the reasons set forth above and in Appendix A, the fourth *Intel* factor also weighs in favor of Mr. Kidd, and Respondents should be ordered to produce responsive documents.

**VI.**   **The Subpoenas Were Properly Served**

Respondents assert that they were not served with the document subpoenas. Such assertion is contrary to the affidavits of service submitted by Thomas A. Lyons, a State Marshall for Fairfield County. *See* Lavine Decl., Exs. A and B. In any event, there can be no dispute that Respondents have actual notice of the document subpoenas; Counsel for Mr. Kidd provided counsel for Respondents with copies of the document subpoenas that were attached to the 1782 Application and counsel for Respondents has since raised general and specific objections to each of the document requests contained therein. Because there is no dispute as to actual notice, the motion to quash should be denied. *See First City, Texas-Houston, N.A. v. Rafidain Bank,* 197 F.R.D. 250, 255 (S.D.N.Y.2000) (finding that attaching a subpoena to the door, and mailing another copy to counsel of record was sufficient "especially since, as noted, Rafidain does not deny that it received timely actual notice of the subpoena"); *In re Shur*, 184 B.R. 640, 644 (Bankr. E.D.N.Y. 1995) ("We therefore hold that the only limitation upon service under Rule 45 is that the procedure employed be reasonably calculated to give the non-party actual notice of the proceedings and an opportunity to be heard.")

Respondents separately assert that the deposition subpoenas should be quashed because witness and estimated mileage fees were not tendered at the time the deposition subpoenas were served. However, the non-provision of such fees at the time of service does not provide sufficient grounds for a motion to quash, particularly where the fees are subsequently tendered. *See WhitServe LLC v. Computer Packages, Inc.*, No. 3:06CV1935 AVC, 2013 WL 6169280, at *3 (D. Conn. Nov. 22, 2013). Indeed, the more appropriate and modern practice—which had been intended by Mr. Kidd—is for litigants to agree upon the fee and travel allowance and to tender such fee upon appearance at the deposition. This permits and encourages parties to resolve such

matters as the location of, and reasonable means of transport to, the deposition, without having to issue multiple checks.

In this case, the amount owed to each deponent will be approximately $170. This amount includes the daily attendance fee of $40, plus a travel allowance of $130 to New York City calculated in accordance with 5 U.S.C. § 5704. *See* 28 U.S.C. § 1821. Since the time of service of the Subpoenas, Mr. Kidd has caused two checks in the amount of $170 each to be delivered to Respondents. Lavine Decl., Ex. P. Under the circumstances, it would not be appropriate to quash the deposition subpoenas merely because *de minimis* fees were not provided at the time of service.[11]

## **CONCLUSION**

For all the foregoing reasons, and those set forth in the 1782 Application, the Court should permit Mr. Kidd's discovery to proceed and deny Respondents' Motion in its entirety.

Dated: April 10, 2020

---

[11] Respondents accuse Mr. Kidd of gamesmanship, and yet, Respondents argue that: (i) on the one hand, they need not appear for a deposition; and (ii) on the other hand, Mr. Kidd is at fault for failing to pay upfront a *de minimis* amount for a deposition at which Respondents currently refuse to appear. Further, on April 7, 2020, counsel for Mr. Kidd contacted counsel for Respondents by email to ask whether counsel would accept delivery of the checks referenced herein on behalf of Respondents. Counsel for Respondents did not respond and, therefore, counsel for Mr. Kidd engaged Mr. Lyons to deliver the checks to Respondents.

BERCHEM MOSES PC

By:  */s/ Bryan L. LeClerc*
     Bryan L. LeClerc
     Fed. Bar # CT02178
     75 Broad Street
     Milford, CT 06460
     Telephone:  +1 203 783 1200
     Email: bleclerc@berchemmoses.com

KOBRE & KIM LLP

By:  */s/ Adam M. Lavine*
     Michael S. Kim
     Fed. Bar # CT28152
     Adam M. Lavine (*admitted pro hac vice*)
     Fed. Bar # PHV10583
     800 Third Avenue
     New York, New York 10022
     Telephone:  +1 212 488 1200
     Email: michael.kim@kobrekim.com
     Email: adam.lavine@kobrekim.com

*Attorneys for Robert Gordon Kidd*

APPENDIX A

| Document Request 1: |
|---|
| For the Pre-Transaction Period, all Documents and Communications concerning Mr. Kidd, ITS, or the Transaction, including but not limited to: (a) Communications sent or received by You concerning the terms and/or negotiation of a potential transaction involving ITS or Mr. Kidd; (b) Communications sent or received by You concerning the value ascribed to ITS by any Person; and (c) all Documents executed by, or on behalf of, You, LRP GP V Inc., LRP GP V LP, or LRM GP LLC in connection with the Transaction. |
| **Document Request 2:** |
| For the Post-Transaction Period, all Documents and Communications concerning the Transaction, including but not limited to: (a) Communications sent or received by You concerning the terms of the Transaction; and (b) Communications sent or received by You concerning the gain or loss to Lime Rock V on account of the Transaction. |

| Objections by Respondents (Overbreadth & Undue Burden) | Mr. Kidd's Responses |
|---|---|
| Kidd is seeking documents that would be nearly 10 years old, or older. | The requested documents are relevant to critical issues in the Scottish Proceeding. *See supra* at 7, 17-21, 26; *See* Second Kerr Decl. ¶¶ 10-11; Memorandum in Support of 1782 Application ¶¶ 55-56. <br><br> The Federal Rules do not prohibit searches for documents based on how old they are. Given the timing of the Transaction, certain Responsive documents are expected to be more than 10 years old. Critically, however, Respondents do not assert that any responsive documents are unavailable due to their age, or that they would be difficult to access or produce. |
| Kidd is also seeking documents belonging to the Lime Rock Entities and/or documents that Respondents do not maintain in their individual capacities. If Kidd wants discovery from the Lime Rock Entities, he should be made to serve said discovery on the Lime Rock Entities. A party cannot serve a subpoena on an officer/employee of a company and command said individual to walk into his/her employer and copy documents belonging to (or | Respondents are wrong as a matter of law that Respondents cannot be made to produce documents maintained or belonging to corporate entities. *See supra* Section V and cases cited therein. Here, Mr. Kidd has established that Respondents have the |

| | |
|---|---|
| maintained by) the company/entity. Because this Request seeks documents belonging to the Lime Rock Entities, and which are not maintained by Respondents in their individual capacities, said Request may seek Lime Rock's privileged and confidential documents / materials / information, which Respondents cannot be made to produce in their individual capacity.  In addition, this Request as worded may be construed to seek documents that are protected from discovery because they are attorney client privileged. | requisite "control" over any documents that may be in possession of the Non-Defenders or the Lime Rock Entities.  *See id.*<br><br>Any confidentiality concerns can be dealt with by agreement or court order.  *See In re Consellior SAS, Kerfraval, Ass'n De Documentation Pour L'industrie Nationale*, No. 13 MC 34, 2013 WL 5517925, at *2 (D. Conn. Oct. 2, 2013) (cited *supra* at Section V.)  Responsive documents for which a privilege is asserted can and should be listed on a privilege log.  *See* Local Rule 45. |
| Respondents, in their individual capacities, have no documents to produce in response to this Request. Respondents, in response to this Request, have no documents and thus this response and objection should not be construed to suggest that the Lime Rock Entities would have responsive documents regarding such subject matter, as the subpoena at issue has not been attempted to be served on the Lime Rock Entities. | As established in Section V above, whether Respondents maintain documents in their individual capacities is not relevant. Federal Rule 45 requires the production of responsive documents in "control" of Respondents, including any responsive documents in the possession of the Non-Defenders or the Lime Rock Entities.  FED. R. CIV. P. 45(a)(1)(iii). |

| **Document Request 3**: |
|---|
| All Documents and Communications concerning or evidencing the role of P&W in connection with the Transaction, including but not limited to Communications concerning the Transaction between or copied to You, on the one hand, and Mr. Gordon or Mr. Allan, on the other hand. |
| **Document Request 4**: |
| All Documents and Communications concerning or evidencing any actual, potential, or perceived conflict in the role of P&W or Ledingham Chalmers in connection with the Transaction, including but not limited to Communications between or copied to You, on the one hand, and Mr. Gordon or Mr. Allan, on the other hand. |

| **Objections by Respondents**<br>**(Overbreadth & Undue Burden)** | **Mr. Kidd's Responses** |
|---|---|

A-2

| | |
|---|---|
| Kidd is seeking documents that would be nearly 10 years old, or older. | See above for Mr. Kidd's Response to this objection, which was also lodged in respect of Document Requests 1 & 2. |
| Kidd is also seeking documents belonging to the Lime Rock Entities and/or documents that Respondents do not maintain in their individual capacities. If Kidd wants discovery from the Lime Rock Entities, he should be made to serve said discovery on the Lime Rock Entities. A party cannot serve a subpoena on an officer/employee of a company and command said individual to walk into his/her employer and copy documents belonging to (or maintained by) the company/entity. Because this Request seeks documents belonging to the Lime Rock Entities, and which are not maintained by Respondents in their individual capacities, said Request may seek Lime Rock's privileged and confidential documents / materials / information, which Respondents cannot be made to produce in their individual capacity. In addition, this Request as worded may be construed to seek documents that are protected from discovery because they are attorney client privileged. | See above for Mr. Kidd's Response to this objection, which was also lodged in respect of Document Requests 1 & 2. |
| Respondents, in their individual capacities, have no documents to produce in response to this Request. Respondents, in response to this Request, have no documents and thus this response and objection should not be construed to suggest that the Lime Rock Entities would have responsive documents regarding such subject matter, as the subpoena at issue has not been attempted to be served on the Lime Rock Entities. | See above for Mr. Kidd's Response to this objection, which was also lodged in respect of Document Requests 1 & 2. |

**Document Request 5:**

All Documents and Communications concerning or evidencing the official or unofficial control structure for each of Lime Rock V, LRP GP V LP, LRP GP V Inc., including but not limited to: (i) lists of officers and directors and/or general partners including the officers and directors of any general partners; (ii) corporate organizational charts; (iii) limited partnership agreements or by-laws or similar governing agreements or corporate organizational documents; (iv) investment management or similar advisory or sub-advisory agreements; (v) offering memoranda or prospectuses; and (vi) powers of attorney.

| **Document Request 6:** |
| :--- |
| All Documents and Communications concerning or evidencing the official or unofficial control structure for each of LRM LLP, LRM GP LLC, LRM UK One Limited, and LRM UK Two Limited, including but not limited to: (i) lists of employees, agents, members, officers, and directors; (ii) corporate organizational charts; (iii) limited partnership agreements, memorandum, and articles of association, or similar governing agreements or corporate organizational documents; (iv) offering memoranda or prospectuses; and (v) powers of attorney. |
| **Document Request 7:** |
| All Documents and Communications concerning or evidencing the official or unofficial control structure for LRM LP, including but not limited to: (i) lists of general partners and the officers and directors of its general partners; (ii) corporate organizational charts; (iii) limited partnership agreements or similar governing agreements or corporate organizational documents; (iv) offering memoranda or prospectuses; and (v) powers of attorney. |

| **Objections by Respondents (Overbreadth & Undue Burden)[12]** | **Mr. Kidd's Responses** |
| :--- | :--- |
| Kidd is clearly seeking documents belonging to the Lime Rock Entities and/or documents that Respondents do not maintain in their individual capacities. If Kidd wants discovery from the Lime Rock Entities he should be made to serve said discovery on the Lime Rock Entities. This request demonstrates the truly improper nature of Kidd's fishing expedition and harassing nature of Kidd's discovery attempt. | Contrary to Respondents' assertions, many of the documents requested should <u>not</u> be maintained by the Lime Rock Entities—defined by Respondents to include only defenders Lime Rock V, LRM LP, and LRM LP—assuming corporate formalities at Lime Rock were maintained.  Specifically, Document Requests 5-7 include requests concerning the internal affairs of non-defenders LRP GP V LP, LRP GP V Inc., LRM GP LLC, LRM UK One Limited, and LRM UK Two Limited.  Respondents hold positions at all of these non-defender entities and, therefore, submitting document requests to them directly is more efficient, and more likely to result in the production of relevant documents, than directing discovery to the defenders or to each of these non- |

---

[12] Respondents' objections to Document Requests 5-7 had slight variations, but were substantively similar.  They are addressed together, consistent with Local Rule 37(b)(1) ("Where several different items of discovery are in dispute, counsel shall, to the extent possible, group the items into categories in lieu of an individual listing of each item.").

| | |
|---|---|
| | defenders, some of which are not located in Scotland or the US. *See supra* Section IV.C. and V.<br><br>Further, (i) Section 1782 discovery does not require Mr. Kidd to first seek discovery in Scotland before commencing discovery against Respondents, *see supra* Section III.B., and (ii) it is consistent with the Federal Rules to serve individuals with document requests where they have "control" over documents in the possession of corporate entities. *See supra* Section V (citing *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 180-81 (S.D.N.Y. 2006); *United States v. Int'l Bus. Machines Corp.*, 71 F.R.D. 88, 91 (S.D.N.Y. 1976); *Infinite Energy, Inc. v. Thai Heng Chang*, No. 1:07-CV-23-SPM-AK, 2008 WL 11320142, at *7 (N.D. Ga. May 30, 2008); and *In re Rule 45 Subpoena Issued to Robert K. Kochan*, No. 5:07-MC-44-BR, 2007 WL 4208555, at *4 (E.D.N.C. Nov. 26, 2007).). |
| Kidd is serving domestic discovery on Respondents in an attempt to obtain documents from UK companies/entities, which is entirely improper.[13] | Respondents cite not basis for this proposition, which is contrary to the express terms of Section 1782 and precedent from the Second Circuit Court of Appeals. *See supra* Section III (citing *Mees v. Buiter*, 793 F.3d 291, 303–04 (2d Cir. 2015) and *In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997)). |
| A party cannot serve a subpoena on an officer/employee of a company and command said individual to walk into his/her employer and copy documents belonging to (or maintained by) the company/entity. Because this Request seeks documents belonging to the Lime Rock Entities, and which are not maintained by Respondents in their individual capacities, said Request may seek | See above for Mr. Kidd's Response to this objection, which was also lodged in respect of Document Requests 1-4. |

---

[13] This objection was raised in response to Document Request 6 only.

| | |
|---|---|
| Lime Rock's privileged and confidential documents / materials / information, which Respondents cannot be made to produce in their individual capacity. In addition, this request as worded may be construed to seek documents that are protected from discovery because they are attorney client privileged. | |
| Respondents, in their individual capacities, have no documents to produce in response to this Request. Respondents, in response to this Request, have no documents and thus this response and objection should not be construed to suggest that the Lime Rock Entities would have responsive documents regarding such subject matter, as the subpoena at issue has not been attempted to be served on the Lime Rock Entities. | See above for Mr. Kidd's Response to this objection, which was also lodged in respect of Document Requests 1-4. |

| **Document Request 8:** | |
|---|---|
| All Documents and Communications provided to investors and/or prospective investors in Lime Rock V concerning Mr. Kidd or the Transaction | |
| **Objections by Respondents (Overbreadth & Undue Burden)** | **Mr. Kidd's Responses** |
| Kidd is seeking documents that would be nearly 10 years old, or older. | See above for Mr. Kidd's Response to this objection, which was also lodged in respect of Document Requests 1-4. |
| Kidd is also seeking documents belonging to the Lime Rock Entities and/or documents that Respondents do not maintain in their individual capacities. If Kidd wants discovery from the Lime Rock Entities, he should be made to serve said discovery on the Lime Rock Entities. A party cannot serve a subpoena on an officer/employee of a company and command said individual to walk into his/her employer and copy documents belonging to (or maintained by) the company/entity. Because this Request seeks documents belonging to the Lime Rock Entities, and which are not maintained by Respondents in their individual capacities, said Request may seek Lime Rock's privileged and confidential | See above for Mr. Kidd's Response to this objection, which was also lodged in respect of Document Requests 1-7. |

| | |
|---|---|
| documents / materials / information, which Respondents cannot be made to produce in their individual capacity.  In addition, this Request as worded may be construed to seek documents that are protected from discovery because they are attorney client privileged. | |
| Respondents, in their individual capacities, have no documents to produce in response to this Request. Respondents, in response to this Request, have no documents and thus this response and objection should not be construed to suggest that the Lime Rock Entities would have responsive documents regarding such subject matter, as the subpoena at issue has not been attempted to be served on the Lime Rock Entities. | See above for Mr. Kidd's Response to this objection, which was also lodged in respect of Document Requests 1-7. |

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 10, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's CM/ECF system.

*/s/ Bryan L LeClerc*
Bryan L. LeClerc