UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re:<br><br>**Application of Robert Gordon Kidd**<br>**To Take Discovery Pursuant To**<br>**28 USC § 1782** | Civil Action No. 3:20mc16(TOF) |

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO QUASH THE SUBPOENAS
AND REQUESTS TO PRODUCE DOCUMENTS SERVED UPON
<u>JOHN THOMAS REYNOLDS AND MARK MCCALL</u>**

John Thomas Reynolds ("Reynolds") and Mark McCall ("McCall") (collectively "Respondents") submit this Reply in response to Applicant Robert Gordon Kidd's ("Applicant") Memorandum in Opposition to Motion to Quash (the "Opposition"). For the following reasons, the Opposition provides no legal basis for this apex discovery from senior executives of the very entity that Applicant is suing in the underlying Scottish Proceeding. Therefore, Respondents' Motion to Quash should be granted.

**I. SUMMARY OF ARGUMENT**

This proceeding is Applicant's attempt to gain through apex deposition that which, when asked by the Scottish Court, Applicant did not say he needed. Respondents are the managing directors of one of the legal entities that Applicant is suing in Scotland. This case is an unabashed attempt at harassing and burdensome apex discovery—which is as improper in a Section 1782 subpoena as it is in traditional discovery.

Without citation to any authority, Applicant asserts that the Second Circuit's apex-deposition doctrine "cannot apply to Respondents" simply because Applicant has not bothered to determine which "lesser-ranking individuals" might provide relevant information. *See* Opposition

(Doc. 11) at 15-17. However, the burden is on Applicant to exhaust less intrusive discovery—such as a Rule 30(b)(6) corporate deposition—before seeking the "exceptional" remedy of apex depositions. *See Lederman v. New York City Dept. of Parks & Recreation*, 731 F.3d 199 (2d Cir. 2013). Applicant's undisputed failure to pursue less intrusive discovery bars these depositions.

Similarly, Applicant's arguments regarding the remaining *Intel* factors are untenable. Under the first factor, Applicant is seeking corporate documents belonging to the defendants in the Scottish Proceeding, and therefore the documents are requested from participants in that foreign litigation. *See Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 85 (2d Cir. 2004). Second, contrary to Applicant's assertion, Respondents do not concede that the requested discovery would be admissible in Scotland, given that the Scottish Court has only ordered discovery ***from the Applicant*** pending resolution of preliminary dispositive motions. Finally, there is evidence that Applicant is seeking to circumvent the procedures in the Scottish Proceeding, given that he admits he remained silent when the Scottish Court asked if he needed any discovery.

Because none of the *Intel* factors support this onerous and harassing apex discovery, Respondents respectfully request that the Court grant their Motion to Quash.

## II.  OVERVIEW OF FACTS

Applicant is merely seeking discovery from Respondents because they are executives or "principals" of one of the Lime Rock Entities. Despite the Lime Rock Entities ongoing cooperation in the Scottish Proceeding, including prompt response to Applicant's previous requests,[1] neither the Lime Rock Entities nor the Scottish Court were given any notice that Applicant had general questions about Lime Rock's corporate structure or need for documents.

---

[1] For example, Applicant's counsel sent the Lime Rock Entities a letter asking about the steps Lime Rock was taking "regarding the preservation of assets." *See* Ex. A. Within a week, Lime Rock's Scottish counsel responded to each and every inquiry raised in Applicant's letter, thereby resolving the matter without need for court intervention. *See* Ex. B.

2

Rather, Lime Rock and Respondents were blindsided by this apex subpoena, creating unnecessary litigation in this Court and the Scottish Court that might have been resolved by agreement.

As Applicant freely acknowledges, he does not have a reason to suspect that the Respondents have relevant information, and this "discovery is aimed, in part, at uncovering the import of Respondents' various positions" in the Lime Rock Entities. Opposition (Doc. 11) at 6. Applicant merely reasons that based on their status as executives, Respondents can obtain the very corporate documents which Applicant chose not to pursue in the Scottish Proceeding, as well as documents from a laundry list of Lime Rock subsidies that have no connection to the allegations in the Scottish Proceeding.

As apex executives, Reynolds and McCall are both managing directors involved in the high-level day-to-day operations of their employer, Lime Rock Management. *See* Reynold's Decl. (Doc. 9-4) ¶¶ 1-5; McCall Decl. (Doc. 9-5) ¶¶ 1-5. Requiring either Reynolds or McCaul to sit for a deposition would be highly disruptive to the performance of their obligations. Reynold's Decl. (Doc 9-4) ¶¶ 5, 7; McCall Decl. (Doc. 9-5) ¶¶ 5, 7. Furthermore, Respondents do not have the documents that Applicant seeks—which encompass a laundry list of documents from all Lime Rock entities that potentially/allegedly in any way relate to the transaction at issue in the Scottish litigation. Finally, the laundry list of Lime Rock affiliates from whom Applicant seeks discovery—including companies that have no connection to the Scottish Transaction—is a fishing expedition from entities who have no relevant documents to produce.

In the Scottish Proceeding, the defendants have filed initial defenses through a Preliminary Hearing—similar to a motion to dismiss in federal court—in which defendants argue that Applicant's previous settlement with a related party bars Applicant's current suit. *See* Doc. 9-1 at 5-6. If the Scottish Court grants defendants' requested relief, then Applicant's claims will be

3

deemed "incompetent"—meaning he has failed to state a valid claim against the defendants and making all discovery moot. *Id.*

Given the importance of this threshold issue in the Preliminary Hearing, all parties to the Scottish Proceeding identified the limited discovery that should be permitted at this stage. Applicant did not identify any documents that he required from defendants, including Respondents' employer. Similarly, Applicant did not argue for any discovery at the Preliminary Hearing before the Scottish Court. *See Id.* at 6-7. Instead, at the Preliminary Hearing, all parties agreed, and the Scottish Court ordered, the Initial Procedures which currently limit discovery to documents that Applicant, and only Applicant, must produce. *Id.*

Applicant's only response to this undisputed factual background is as follows—Applicant did not specifically tell the Scottish Court that he would not pursue foreign discovery. Opposition (Doc. 11) at 10-11. Applicant asserts that his subjective intent was to always pursue this apex discovery through this foreign subpoena, thereby justifying this bait-and-switch apex deposition. *Id.* Although Applicant's subjective intent cannot alter the Scottish Court's order, this brazen attempt to use foreign discovery that is not ripe in Scotland underscores Applicant's bad faith.

In response, the Lime Rock Entities have been forced to file a "Petition to Interdict"—similar to request for protective order—in the Scottish Proceeding, asking the Scottish Court to instruct Applicant to adhere to the discovery limits imposed and not seek harassing discovery from executives abroad. *See* Ex. C.[2]  Therefore, the Scottish Court will address the propriety of Applicant's bait-and-switch tactics.

---

[2] The attached exhibit is an "as filed" version of the Petition to Interdict, as well as a copy of certification of receipt from the Scottish Court.

## IV. ARGUMENT

There are four discretionary factors that courts must consider before granting discovery under Section 1782(a). *See In re Intel*, 542 U.S. 241, 264 (2004). Given that Applicant's discovery is unduly burdensome as a matter of law, Respondents begin with the fourth *Intel* factor.

### A.  **This apex deposition is clearly overly burdensome under binding precedent.**

Applicant seeks to depose Reynolds and McCall—and require them to produce documents from multiple Lime Rock entities—merely because of their high-level executive positions. Applicant makes no attempt to explain what information and/or documents Respondents allegedly have, he makes no effort to explain why he believes Respondents testimony is critical to the Scottish Proceeding, and he does not identify any less intrusive discovery he has sought before these apex depositions. Applicant merely aims to harass Respondents. Under clear precedent, Applicant has not satisfied the heightened burden for obtaining apex discovery.

The Second Circuit has held that "§ 1782 discovery request should assess whether the discovery sought is overly broad or unduly burdensome by applying the familiar standards of Rule 26 . . . ." *Mess v. Buiter*, 793 F.3d 291, 302 (2d Cir 2015). Similarly, applying Rule 26, the Second Circuit has held that apex depositions are barred unless there is a showing that (i) the executive has unique first-hand knowledge related to the litigation claims or (ii) other less intrusive means to discovery of the information have been exhausted. *See Lederman v. New York City Dept. of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013). Therefore, under the familiar standards of Rule 26, apex depositions are unduly burdensome unless exceptional circumstances exist.

In this case, it cannot reasonably be argued that either element is satisfied. The Opposition makes no representation that less intrusive discovery has been exhausted. *See* Opposition (Doc. 11). In fact, these apex depositions are the first discovery that Applicant has sought. Furthermore,

despite the Lime Rock Entities prompt responses in the Scottish Proceeding, the Lime Rock Entities were never contacted about any questions concerning their corporate structure. Instead, Applicant blindsided both Respondents and the Lime Rock Entities through this apex subpoena for information that might have been provided without court intervention. Therefore, it is undisputed that the second element of the apex deposition doctrine is not satisfied.

Similarly, Applicant's only argument for the first element turns the apex-deposition doctrine on its head. Applicant asserts—based on his *ipse dixit* assumption—that because of their "senior roles," "[i]t cannot be disputed that Respondents have unique knowledge about the nature and extent of their own involvement in the Transaction." Opposition (Doc. 11) 18-19. However, earlier in the Opposition, Applicant says that he needs this deposition "to determine the import of Respondents' various positions." *Id.* at 6. To both acknowledge that he does not know whether Respondents' positions give them special knowledge but then say that Respondents must have special knowledge because of their positions illustrates the fatal flaw in Applicant's subpoena. Indeed, if having a senior role were enough to automatically support the presumption of unique knowledge, then the apex deposition doctrine would be meaningless because every apex deponent would satisfy the first element. *Cf. Lederman*, 731 F.3d at 203.[3]

Under the Federal Rules of Civil Procedure, the Lime Rock Entities themselves have the power to determine who is the best deponent to testify about their corporate structure. *See* Fed. R. Civ. P. 30(b)(6). If Applicant wanted to know more about Lime Rock's corporate structure, he would have asked Lime Rock directly, either in the Scottish Proceeding or in this country, before

---

[3] Applicant also appears to try to shift the burden to Respondents to establish their lack of unique knowledge. *See* Opposition (Doc. 11) at 18-19 (complaining that Respondents did not identify who in Lime Rock Entities has relevant information). However, *Lederman* makes clear that the party seeking discovery bears the burden of establishing the "exceptional circumstances" to support apex deposition. 731 F.3d at 203. Furthermore, the Respondents actually deny having unique or special knowledge. Reynold Decl. (Doc. 9-4) ¶ 7; McCall Decl. (Doc. 9-5) ¶ 7.

6

seeking to depose apex executives. Given that apex depositions are disfavored because litigants use them to harass executives and litigants, Applicant's failure to pursue any other discovery belies his bad faith. *See Treppel v. Biovail Corp.*, No. 03-CIV-3002, 2006 WL 468314, at *1 (S.D.N.Y. Feb. 28, 2006) (noting that apex depositions "create a tool for harassment").

Applicant seeks to sidestep the issue by arguing that the apex deposition doctrine does not apply to the Lime Rock Entities. Opposition (Doc. 11) at 13-14. Specifically, Applicant asserts that "[u]nlike a government or large corporations with a highly-tiered management structure," the Lime Rock Entities have fewer employees. *Id.* Applicant does not cite a single authority which implies that smaller corporations are less entitled to protection from harassing apex depositions. Given that this argument is not supported by any legal authority, let alone any cases discussing the apex-deposition doctrine, the Court need not consider it.

However, it is worth noting that even assuming the Lime Rock Entities have a relatively few number of employees, it is by no means a small company. Applicant's very allegations demonstrate that the Lime Rock Entities provide financing and investments in excess of hundreds of millions of dollars. *See* Memo. in Support of App. (Doc. 1-1) ¶¶ 2, 21-28. Furthermore, Respondents both state that they are managing directors of Lime Rock Management and that requiring them to participate in depositions would greatly impair their business. *See* Reynold Decl. (Doc. 9-4) ¶¶ 3, 5; McCall Decl. (Doc. 9-5) ¶¶ 3, 5. Therefore, the very concerns of harassing and burdensome discovery that animate the apex deposition doctrine are present in this case.

> **B.      Applicant seeks documents that are in the possession of the Lime Rock Entities, and therefore this is discovery from a participant in the Scottish Proceeding.**

Applicant's discovery requests violate the first *Intel* factor because this is discovery from a participant in the Scottish Proceeding. As *Intel* explains, "when the person from whom discovery

is sought is a *participant* in the foreign proceeding . . . the need for § 1782(a) as apparent." 542 U.S. at 264.  Applicant seeks to masquerade his discovery as being from a "non-participant" because he is technically serving a subpoena on Reynolds and McCall (or indirectly on other Lime Rock entities).  *See* Opposition (Doc. 11) at 6-8.  However, all of the requests are for documents from the Lime Rock Entities and their affiliates, and binding precedent recognizes that such requests are in fact discovery from the participant companies, not the agents themselves.

The Second Circuit made this point clear within months of the *Intel* opinion.  *See Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 85 (2d Cir. 2004).  In *Schmitz*, the applicant sought discovery from a domestic law firm that represented a German company in a German lawsuit.  *Id.* at 81-82.  The Second Circuit affirmed denial of this discovery, noting that "[a]lthough technically the respondent in the district court was [the law firm], *for all intents and purposes petitioners are seeking discovery from* [the German client]."  *Id.* at 85.  Therefore, under the actual rationale of the first *Intel* factor, the technical distinction between who receives the subpoena and whose documents are ultimately sought is irrelevant.  *Id.*

This is further supported by *In re Microsoft Corp.* 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006), *abrogated on other grounds by In re del Valle Ruiz*, 939 F.3d 520, 532 n.15 (2d Cir. 2019).  In that case, Microsoft subpoenaed documents from affiliates of the defendant in a foreign antitrust proceeding.  *Id.* at 191.  The court properly saw through the ruse, and noted that while the affiliates "are not 'participants,' *per se*, in the underlying antitrust proceeding, all of the documents sought by Microsoft are within the [foreign defendant's] reach."  *Id.* at 194.  "That Microsoft must request the documents from the [defendant], as opposed to requesting them directly from [the affiliates], is irrelevant.  ***The relevant inquiry is whether the evidence is available to the foreign tribunal.***"  *Id.* (emphasis added).

8

In this case, both Reynolds and McCall have averred that they do not have access to documents beyond those that are "the property of" Lime Rock Management. Reynold Decl. (Doc. 9-4) ¶ 4; McCall Decl. (Doc. 9-5) ¶ 4. Applicant does not dispute this fact, and indeed claims that Respondents status as executives is what gives them the ability to force Lime Rock Management to turn over the documents. Opposition (Doc. 11) at 2-3. Given that Lime Rock Management is a defendant in the Scottish Proceeding, Applicant's requests actually seek evidence from a participant in the Scottish Proceeding through a circuitous route. Such clever litigation tactics cannot overcome the actual rationale of *Intel*—i.e., that if the evidence is available directly in the foreign proceeding, there is no reason to seek it through Section 1782. *Schmitz*, 376 F.3d at 85; *In re Microsoft Corp.*, 428 F. Supp. 2d at 194. Indeed, as a result of Applicant's harassing subpoena, the Lime Rock Entities have filed a Petition to Interdict in the Scottish Proceeding, asking the Scottish Court to bar this foreign discovery from their executives. *See* Ex. C.

Therefore, the first *Intel* factor weighs in favor of Respondents' Motion.

### C. Both the second and third *Intel* factors weigh against discovery because the Scottish Court has not ordered discovery at this stage.

The second and third *Intel* factors concern related issues—i.e., whether the foreign jurisdiction would accept the documents sought and whether the discovery indicates an attempt to circumvent the foreign jurisdiction's proceedings. *See Intel*, 542 U.S. at 264-65. In this case, both factors weigh against discovery because when asked by the Scottish Court whether he needed discovery at this stage, Applicant remained silent. Doc. 9-1 at 5-7. Based on this representation, the Scottish Court ordered only limited discovery and *only from* Applicant. *Id.*

Applicant falsely asserts that Respondents concede that the Scottish Court would accept this deposition of the Lime Rock Entities' executives. *See* Opposition (Doc. 11) at 8-9. Nothing could be further from the truth. As detailed in Respondents' Motion to Quash, nothing raised in

9

Applicant's discovery requests relate to the issues currently pending before the Scottish Court. *See* Memo. re. Mtn. to Quash (Doc. 9-1) at 5-7. Furthermore, the Lime Rock Entities are filing a Petition to Interdict this harassing discovery in the Scottish Court. *See* Ex. C. If granted, that petition would demonstrate that the Scottish Court is not receptive to this discovery.[4]

Similarly, Applicant's attempt to seek discovery through this subpoena after it represented to the Scottish Court it did not need discovery shows that the third *Intel* factor weighs against discovery. *See id.* (noting that Section 1782(a) cannot be used to "circumvent foreign proof-gathering restrictions). As detailed above, the Scottish Court has ordered only the discovery that the parties agreed to—and the parties only agreed to discovery from Applicant.

Applicant's only response to these facts is incredible. The Applicant asserts that because he did not specifically tell the Scottish Court that he would not pursue apex discovery in foreign jurisdictions, his subjective intent was never to limit his discovery to the parameters set by the Scottish Court. Opposition (Doc. 11) at 10-11. This is nothing more than an argument that Applicant had his finger's crossed in Scotland. Such gamesmanship underscores the bad faith by which Applicant now seeks this apex discovery.[5] This bad faith will be—and should be—addressed by the Scottish Court through the Lime Rock Entities' Petition to Interdict.

## V. CONCLUSION

WHEREFORE, Respondents respectfully request that this Court quash the subpoenas to conduct depositions and produce documents that have been served (or attempted to be served) on Reynolds and McCall, and such other and further relief, as the Court may award.

---

[4] If the Court harbors any doubts about whether the Scottish Court will accept this requested discovery, the more prudent course would be to wait until the Scottish Court rules on the Petition to Interdict. Similarly, if defendants are successful in the Initial Proceeding, then Applicant's claims will be dismissed, making all of this discovery moot.
[5] Respondents incorporate the remaining objections to Applicant's discovery request that are detailed in their Motion to Quash.

Dated:  April 24, 2020                           GREENBERG TRAURIG, LLP

                                                 By: */s/ Toby S. Soli*
                                                     Toby S. Soli
                                                     Fed. Bar No. ct-18697
                                                     445 Hamilton Avenue
                                                     White Plains, NY 10601
                                                     Telephone:  212-801-9200
                                                     Facsimile:  212-801-6400
                                                     Email: solit@gtlaw.com
                                                     *Attorneys for Respondents*

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2020, a true and correct copy of the foregoing document was electronically filed with the Court and that counsel of record who are deemed to have consented to electronic service are being served via the Court's CM/ECF system.

*/s/ Toby S. Soli*
Toby S. Soli
