# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| In re Application of Robert Gordon Kidd for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings | Case No.:     3:20-mc-00016-TOF<br><br><br>May 12, 2020 |

## RULING ON RESPONDENTS' MOTION TO QUASH (ECF No. 9)

This case arises from an *ex parte* "Application for an Order Under 28 U.S.C. § 1782" filed by the petitioner, Robert Gordon Kidd. On February 20, 2020, Kidd sought leave to serve subpoenas compelling the respondents, John Reynolds and Mark McCall, to provide documents and deposition testimony for use in pending foreign proceedings in Scotland. ("Application," ECF No. 1.) This Court granted leave to serve the subpoenas on February 28, 2020 but added that the respondents could move to quash if they felt they were entitled to relief under Rule 26(c)(1). (ECF No. 6.) On March 20, 2020, the respondents filed a Motion to Quash and Objection(s) to the Subpoenas and Requests to Produce Documents. (ECF No. 9.) For the reasons set forth below, the respondents' Motion to Quash is **DENIED**.

## I.      Factual Background

Kidd is a Scottish businessman who formerly owned ITS Tubular Services (Holdings) Limited ("ITS"), an industrial services company. (ECF No. 1-1, ¶ 1.) In 2007 he decided to sell part of his interest in ITS to a minority investor. (*Id.* ¶ 20.) He hired the law firm of Paull & Williamsons LLP ("P&W") to represent him, and after a "marketing process" he received an offer from Lime Rock Partners ("Lime Rock"), a private equity investment firm with offices in

Westport, Connecticut.  (*Id.* ¶¶ 21, 23.)  The deal closed in 2009, and the buyer was Lime Rock's Cayman Islands affiliate, "Lime Rock V."  (*Id.* ¶¶ 2, 40.)

Kidd claims to have learned afterward that his P&W attorneys "were tainted by egregious conflicts of interest."  (*Id.* ¶ 3.)  He says that P&W "were the long-time corporate transactional lawyers for Lime Rock, and they helped to secure for Lime Rock a deal that was highly advantageous to Lime Rock, and consequently highly disadvantageous to Mr. Kidd, their own client in the transaction."  (*Id.*)  He further says that he uncovered this conflict only in 2015, during the discovery phase of a professional negligence suit against P&W.  (*Id.* ¶¶ 31–32.)  He settled that suit on a confidential basis but alleges that "the settlement terms were substantially less than the value of" his losses.  (*Id.* ¶ 35.)

Kidd next sought to recover the rest of his claimed losses from Lime Rock.  He alleges that two Lime Rock executives, Hamish Ross and Jason Smith, "were aware that [P&W was] representing the interests of Lime Rock while at the same time nominally representing the interests of" himself and ITS.  (*Id.* ¶ 25.)  In November 2019 he sued Ross and Smith, along with three Lime Rock entities,[1] in the Scottish Court of Session.  (*Id.* ¶ 36.)  His suit "assert[ed] that he has suffered . . . losses as a result of the fraudulent conduct of the [defendants], which conduct took the form of (i) dishonest assistance in P&W's breach of fiduciary duty and (ii) unlawful means conspiracy."  (*Id.* ¶ 37.)

The dispute came into this Court when Kidd decided to pursue discovery from two other Lime Rock executives, John Reynolds and Mark McCall.  Both of these individuals live and work

---

[1]     The three entities are (1) Lime Rock V, "a Cayman Islands exempted limited partnership and investment fund," (2) LRM LP, "a Delaware-registered limited partnership which serves as investment manager and provider of advisory services to Lime Rock V," and (3) Lime Rock Management LLP, "a Scottish-registered Limited Liability Partnership" with a registered office in Aberdeen, Scotland.  (*Id.* ¶¶ 12-14.)

in Connecticut, and neither is a party to the Scottish case.  Reynolds is a managing director of Lime Rock Management LP – which, as noted, is investment advisor to the Lime Rock V entity that purchased the interest in ITS.  (Decl. of J. Reynolds, ECF No. 9 –4, ¶¶ 1-3.)  McCall is also an employee of Lime Rock Management LP.  (Decl. of M. McCall, ECF No. 9-5, ¶ 1.)  Kidd contends that Reynolds and McCall are also principals of Lime Rock V, and senior officers in Lime Rock V's ultimate Cayman Islands parent, LRP GPV, Inc.  (Pet.'s Memo. of Law, ECF No. 11 at 18–21.)  In part because they are principals of the very entity that entered into the deal, and also because they are senior officers in the parent company without whose approval the deal allegedly "could not have occurred," Kidd claims that Reynolds and McCall must have "unique personal knowledge" relevant to the Scottish suit.  (*Id.* at 20–21.)

On February 20, 2020, Kidd filed his Application pursuant to 28 U.S.C. § 1782.  (ECF No. 1.)  He attached copies of the subpoenas that he proposed to serve on Reynolds and McCall. (Exs. 1 & 2 to Decl. of Michael S. Kim, ECF No. 1-4.)  On February 28, 2020, the Court granted him leave to serve the subpoenas.  (ECF No. 6.)  Based on the facts that he alleged, the Court determined that Section 1782's statutory requirements were satisfied, and the so-called "*Intel* discretionary factors" were satisfied as well.  (*Id.*)  The Court therefore granted the Application – but in recognition of the fact that it had heard only one side of the story,[2] it added that "[i]f the respondents believe that they are entitled to relief under Fed. R. Civ. P. 26(c)(1), they may raise the issue in a motion to quash or for protective order."  (*Id.*)

---

[2]      As noted, Kidd filed his Application *ex parte*.  Applications for discovery in aid of foreign proceedings under Section 1782 may be – and often are – made this way.  *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*.").

Kidd then had the subpoenas served by a marshal,[3] and on March 20, 2020, the respondents filed a Motion to Quash.  They principally argued that (1) Kidd is seeking improper "apex" discovery from top corporate executives; (2) Kidd is attempting to use Section 1782 to circumvent Scotland's formal discovery procedures; and (3) the subpoenas are "overly broad, harassing, unduly burdensome, and seek the production of documents and/or materials that should be properly sought from the corporate entities involved in the Scottish Proceeding."  (Resp't Memo. of Law, ECF No. 9-1, at 2.)  Kidd filed a brief and exhibits in opposition, and the respondents filed a reply brief with additional exhibits.  (ECF Nos. 11 & 12.)  The Court held oral argument on May 1, 2020 (ECF Nos. 13 & 14), and both parties submitted additional information and argument in the guise of a post-hearing status report.  (ECF Nos. 15 & 16.)  The motion is now ripe for decision.

## II.    __Standard of Review__

28 U.S.C. § 1782 allows the district court to order the production of testimony and/or documents for use in a foreign proceeding. "The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . ." *Id.*  The statute authorizes district courts to grant such relief only where (1) the person from whom discovery is sought resides or is found in the district of the district court where the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the application is made by the foreign tribunal or "any interested person."  *Brandi–Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012).

---

[3]    The respondents initially contested the validity of service, but they conceded at oral argument that these concerns have been resolved.  (Tr. of Oral Arg., ECF No. 14, at 14:11-20.)

4

If the statutory requirements have been met, the Court has discretion to grant discovery. "[O]nce the statutory requirements are met, a district court is free to grant discovery in its discretion." *Schmitz v. Berstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83-84 (2d Cir. 2004) (brackets in original, quotation marks and citations omitted). "This discretion, however, is not boundless." *Id.* at 84. Courts must analyze the application in light of the "twin aims" of Section 1782, which are "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts . . . ." *In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997) (quoting *Application of Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992)).

In *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), the Supreme Court articulated four non-exclusive factors to guide district courts in the exercise of discretion over Section 1782 applications. District courts may consider (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal and the foreign jurisdiction's "receptivity" to assistance from the United States; (3) whether the request is actually an attempt to circumvent "foreign-proof gathering restrictions" or other foreign policies; and (4) whether the request is "unduly intrusive or burdensome." 542 U.S. at 264–65; *see also Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244 (2d Cir. 2018). These four factors, collectively, are known as the "*Intel* factors."

Courts analyze the fourth *Intel* factor in the same way that they analyze intrusion and burden objections under Rules 26 and 45 of the Federal Rules of Civil Procedure. As the Court of Appeals has explained, "a district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar

standards of" Rule 26. *Mees v. Buiter*, 793 F.3d 291, 302 (2d Cir. 2015); *see also In re Edelman*, 295 F.3d 171, 178 (2d Cir. 2002) ("[R]ule 26(c) of the Federal Rules authorizes a district court to modify or even quash a subpoena . . . ."); *In re Application of Shervin Pishevar for an Order to take Discovery for use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782*, No. 1:19-MC-00503 (JGK) (SDA), 2020 WL 769445, at *6 (S.D.N.Y. Feb. 18, 2020) (ruling on whether a Section 1782 application complies with Rule 45). Rule 45(c)(3) commands that a court "shall" quash or modify a subpoena if the subpoena "subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iv). "The burden of persuasion in a motion to quash a subpoena is borne by the movant." *Travelers Indem. Co. v. Metro. Life Ins. Co.,* 228 F.R.D. 111, 113 (D. Conn. 2005) (internal citations omitted).

## III.   Discussion

### A.   Kidd has satisfied the three statutory factors outlined in 28 U.S.C. § 1782.

The respondents do not dispute that Kidd's Application satisfies the statutory factors. The respondents can be found in the District of Connecticut, given that they both reside and work in Connecticut. (*See* Decl. of J. Reynolds, ECF No. 9-4, ¶ 5; Decl. of M. McCall, ECF No. 9-5, ¶ 5.) The discovery sought by Kidd is for use in *Robert Gordon Kidd v. Lime Rock Management LLP & Others*, Case No. CA163/19 (Court of Session), a foreign proceeding currently pending before Scotland's Court of Session. (*See* Ex. A-1 to Decl. of A. Garioch, ECF No. 9-3.) And Kidd, as the "pursuer" (*i.e.* plaintiff) in the Scottish proceeding, is an "interested person" in the foreign litigation. The three statutory factors having been satisfied, this Court is "free to grant discovery in its discretion." *Schmitz,* 376 F.3d at 83–84 (internal quotation marks omitted).

### B.   The four *Intel* discretionary factors weigh in Kidd's favor.

As noted above, the Court's discretion is "not boundless." *Id.* at 84. It must be exercised in accordance with the twin statutory goals of "providing efficient means of assistance to

participants in international litigation" and encouraging foreign tribunals to provide similar assistance to American courts. *Id.* In particular, it must be exercised in accordance with the four *Intel* factors.

The respondents contend that the *Intel* factors weigh in their favor. They argue that (1) Reynolds and McCall are "participants" in the foreign proceeding for purposes of Section 1782; (2) the Scottish Court would be unreceptive to the discovery sought; (3) Kidd is intentionally circumventing Scottish discovery rules; and (4) the requests are overly broad and burdensome, in particular because they qualify as improper "apex discovery." (Resp't Memo. of Law, ECF No. 9-1, at 1–2.) For the following reasons, the Court disagrees and finds that all four *Intel* factors weigh in Kidd's favor.

i. **The respondents have not shown that they are entitled to be treated as "participants" in the Scottish proceeding for purposes of Section 1782.**

Once the three statutory elements are satisfied, the first discretionary factor to consider is whether "the person from whom discovery is sought is a participant in the foreign proceeding." *Intel*, 542 U.S. at 264. Because Section 1782 is intended to aid foreign tribunals and parties in obtaining evidence outside their reach, the need for Section 1782 discovery is less obvious when the discovery target is a participant in the foreign case. *Id.* "[T]he need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Id.*

The respondents argue that the first *Intel* factor weighs in their favor because, although they are not parties to the Scottish proceeding, they are nevertheless "participants" within the meaning of Section 1782. In support of their argument, they point to Kidd's allegation that they are the "Corporate Decision Makers" for the Lime Rock Entities. (Resp't Memo. of Law, ECF

No. 9-1, at 15.)  They reason that "if the Lime Rock Entities are allegedly acting by and/or through Reynolds and/or McCall, they must be participating in the Scottish Proceeding. Kidd cannot maintain that Reynolds and/or McCall are 'the Corporate Decision Makers' and at the same time allege that Reynolds and/or McCall are not participating in the Scottish Proceeding." (*Id.*)  They argue that the first factor does not turn exclusively (or even principally) on whether they are parties to the Scottish case, but rather on whether their evidence is nevertheless "available to the foreign tribunal."  (Resp'ts Reply, ECF No. 12, at 8 (quoting *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006)).  In other words, they say that the first *Intel* inquiry does not ask whether the foreign court has jurisdiction over them, but instead asks whether their testimony and other evidence will be available to the foreign court through discovery requests propounded to the parties over whom it *does* have jurisdiction – in this case, the three Lime Rock entities.

Kidd disagrees, and argues that the foreign court's jurisdictional reach is the important consideration.  He contends that the foreign court's jurisdiction was essential to the holding in *Intel*, because the Supreme Court held that the need for Section 1782 aid is less apparent when the "foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence."  (Pet.'s Memo. of Law, ECF No. 11, at 7) (citing *Intel*, 542 U.S. at 264).  Kidd also points out that the respondents "have not consented to the Scottish court's jurisdiction," and have instead contended that "any discovery from them in Scotland should be obtained through the Hague Convention – a process that necessarily invokes the jurisdiction of the U.S. courts."  (*Id.*)

Kidd's legal argument about the importance of jurisdiction and party status finds support in a number of cases.  Courts in the Second Circuit have held that the first *Intel* factor weighs in the petitioner's favor when the respondent is not a party to the foreign proceeding.  In *In re Accent Delight International Ltd.*, for example, the Court of Appeals affirmed a district court's order that

the noted auction house Sotheby's submit to discovery; "Sotheby's is not a party to the Monaco proceeding for which the Petitioners seek discovery," and accordingly it was within the district court's "discretion to find that Petitioners satisfied the first *Intel* factor." 791 F. App'x 247, 251 (2d Cir. 2019) (summary order); *accord In re del Valle Ruiz*, 939 F.3d 520, 534 (2d Cir. 2019) ("[T]he factors plainly weighed in favor of discovery against [respondent]. First, [respondent] is not a party to any of the foreign proceedings."); *In re Pishevar*, 2020 WL 769445, at *7 (finding that the first *Intel* factor weighed in the petitioner's favor because "Petitioner has represented to the Court that the Respondent will not be a party to the contemplated proceedings"); *In re Children's Inv. Fund Found. (UK),* 363 F. Supp. 3d 361, 375 (S.D.N.Y. 2019) (noting that the petitioner's "status as a non-party weighs in favor of granting the discovery in the context of a § 1782 application"); *In re Consellior SAS, Kerfraval, Ass'n de Documentation pour L'Industrie Nationale*, No. 3:13-mc-34 (WWE), 2013 WL 5517925, at *2 (D. Conn. Oct. 2, 2013) (favoring petitioner on first *Intel* factor in part because "Respondents are not parties to the action in France and therefore, the French court cannot order them to produce discovery").

The respondents' legal argument also finds support in the case law. Courts in this circuit have held that the first *Intel* factor can weigh against petitioners who nominally seek discovery from non-participants but who, "for all intents and purposes," are actually seeking discovery from participants. In *Schmitz,* for example, the petitioners sought Section 1782 discovery from several U.S. law firms. 376 F.3d at 81–82. The law firms had been involved in an American class-action lawsuit against the foreign defendant and were in possession of "approximately 300,000 documents" that "were produced by [the foreign defendant] in that action." *Id.* at 81. The Second Circuit held that the first *Intel* factor weighed in favor of the law firms, since "[a]lthough technically the respondent in the district court was [the law firm], for all intents and purposes

9

petitioners are seeking discovery from [the respondent], their opponent in the German litigation." *Id.* at 85; *see also Kiobel*, 895 F.3d at 245 (prohibiting discovery from the foreign party's U.S. counsel, since the "real party from whom documents are sought" was a participant in the foreign proceedings); *In re Microsoft Corp.*, 428 F. Supp. 2d at 194 ("While [respondents] are not 'participants,' *per se,* in the underlying antitrust proceeding, all of the documents sought by [petitioner] are within the [tribunal's] reach . . . . The relevant inquiry is whether the evidence is available to the foreign tribunal.").

The Court does not need to choose sides in the parties' dispute over the legal standard, because even if the rule is what the respondents suppose it to be, the first *Intel* factor still breaks in Kidd's favor.  To defeat Kidd's application on the ground that the evidence he seeks is coextensive with what he can get from the Lime Rock entities in Scotland – in other words, to invoke the principle of cases like *In re Microsoft Corp.* – the respondents would have to show that he can get this evidence through Scottish processes.  They have not done so.

To the contrary, the respondents' own submissions indicate that Kidd has a long and uncertain fight ahead of him in Scotland.  A declaration from their Scottish counsel suggests that document discovery is not a matter of right in the Court of Session, but instead may be obtained only by court order.  (Ex. A-4 to Decl. of A. Garioch, ECF No. 9-3) (Court of Session rule providing that "[a]n application by a party for . . . a commission and diligence for the recovery of a document . . . shall be made by motion").  Thus, Kidd may not be able to obtain the three Lime Rock entities' documents – let alone any documents held by persons or entities who are not defendants in the Scottish case – unless he first "justifies" his request in an argument to the court.  (Decl. of A. Garioch, ECF No. 9-2, ¶ 19.)  And to the extent that the respondents have documents

not in the possession of a current defendant,[4] they say that Kidd must apply for Letters of Request under the Hague Convention (Resp'ts Memo. of Law, ECF No. 9-1, at 14) – a process that necessarily invokes the jurisdiction of a U.S. court.

The respondents also have not shown that Kidd can obtain their deposition testimony through Scottish processes.  At oral argument, the Court asked the respondents' counsel whether Lime Rock would produce Reynolds and McCall for depositions in the Scottish case.  (Tr. of Oral Arg., ECF No. 14, at 23:23–24:5.)  Counsel responded that she did not "have any reason to believe that they would prohibit or not participate," but qualified her response by saying that she was "not a Scottish lawyer" and therefore didn't know "the proper procedures" for obtaining their depositions.  (*Id.* at 24:6–13.)  Thus, the Court cannot conclude on the current record that Reynolds' and McCall's testimonial evidence is "available to the foreign tribunal."

It therefore appears that, even in the respondents' telling, Kidd may not be able to obtain all of the evidence he seeks through exclusively Scottish processes.  By extension, it cannot be confidently said that their evidence is "available to the foreign tribunal."  Because the respondents have not satisfied even their own proffered legal standard, the Court find that the first *Intel* factor weighs against them and in favor of Kidd.

---

[4]      The respondents argue that they do not have any such documents, but this claim lacks sufficient evidentiary support.  Each respondent has submitted a declaration, but neither declaration says straight-up that the declarant does not possess any responsive documents or information that will not be produced in the course of the Scottish proceeding.  (ECF Nos. 9-4 & 9-5.)  Rather, both respondents qualify their statements with a claim that Kidd must first tell them why he thinks they know anything:  "Until Kidd provides some basis for the reason(s) that he thinks I have unique personal knowledge of the claims he is making in the Scottish Proceeding, I am confident that there is nothing I can add beyond the discovery that he may conduct against the Lime Rock Entities in the Scottish Proceeding."  (ECF No. 9-4, ¶ 7; ECF No. 9-5, ¶ 7.)

      ii.     **The respondents have failed to show that the Scottish Court would be unreceptive to the documents and testimony sought by Kidd.**

The second *Intel* discretionary factor is the "receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel,* 542 U.S. at 264. The general rule is that the foreign tribunal is receptive until proven otherwise. This is because the alternative, a "tug of war" between two alternate interpretations of foreign law, is undesirable. As the Court of Appeals has written, "we do not read the statute to condone speculative forays into legal territories unfamiliar to federal judges. Such a costly, time-consuming, and inherently unreliable method of deciding section 1782 requests cannot possibly promote the 'twin aims' of the statute." *Euromepa S.A. v. R. Esmerian, Inc.,* 51 F.3d 1095, 1099–100 (2d Cir. 1995). Instead, the court must look for "authoritative proof" of the foreign tribunal's unreceptiveness. *Id.* ("[A] district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782."); *accord In re Esses,* 101 F.3d 873, 876 (2d Cir. 1996) ("[O]nly upon authoritative proof that a foreign tribunal would *reject* evidence obtained with the aid of section 1782, should a district court refrain from granting the assistance offered by the act . . . .") (emphasis in original) (internal quotation marks omitted).

The respondents claim that Kidd seeks irrelevant information, and they argue that the Scottish court would therefore not be receptive to it. (Resp'ts Reply, ECF No. 12, at 9–10) ("[N]othing raised in Applicant's discovery requests relate to the issues currently pending before the Scottish Court.") This argument is unpersuasive for two reasons. First, the respondents offer no "authoritative proof" that the information in their possession is irrelevant under the Scottish law of evidence, nor do they offer any proof that the Scottish court would refuse to receive it even if this were the case. Second, the Court is not persuaded that the information in the respondents'

possession is, in fact, irrelevant.  As principals of Lime Rock V and as senior officials of its Cayman parent, LRV GPV, Inc., Reynolds and McCall may have information on exactly when (if at all) those two companies knew about P&W's conflict.[5]  This information would seem to go to the very heart of the Scottish case, and the Court is therefore unwilling to say that it is irrelevant – at least without "authoritative proof" that the Scottish court would view it as such.

It is also worth noting that the respondents asked the Scottish court to signal its unreceptiveness, and the court declined to do so.  Specifically, the respondents filed "a Petition to Interdict this harassing discovery in the Scottish Court," and they noted that "[i]f granted, that petition would demonstrate that the Scottish Court is not receptive to this discovery."  (*Id.* at 10.)  A hearing was held in Scotland on May 5, 2020 (ECF No. 14 at 16:14-16; ECF Nos. 15 & 16), and the Scottish court decided not to rule on the petition, instead electing to wait until the respondents' Motion to Quash in this Court was resolved.  (ECF Nos. 15 & 16.)[6]  Significantly, the Scottish court had an opportunity to express a lack of receptivity to the evidence, but it abstained from doing so.

---

[5]     In their post-argument submission, counsel asserted that the respondents were not "aware of P&W's alleged conflict of interest" until 2017.  (ECF No. 15, at 2.)  This claim is unsupported by any affidavit or declaration from the respondents themselves, however.  And in any event, Kidd is not obliged to take their word for it.  *Six W. Retail Acquisition v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98, 102 (S.D.N.Y. 2001) (claims of lack of knowledge are "subject to testing by the examining party").

[6]     The parties dispute some of what happened during the hearing on the Petition to Interdict.  (*See* ECF Nos. 15 & 16.)  They agree, however, that the Scottish Court decided that it would wait on this Court's decision on the Motion to Quash before ruling on the petition.  (*See* ECF No. 15 ("The judge decided the better course of action was to continue the Scottish Motion until resolution of the Motion to Quash in the United States . . . ."); ECF No. 16 (stating that the Scottish Court concluded "that it would be appropriate to await a ruling from this Court on the Motion to Quash before the Scottish Court were to consider the Petition for Interdict").)

This Court finds that, for the above reasons, the respondents have not provided authoritative proof that the Scottish court would reject the Section 1782 discovery.  Therefore, the second *Intel* factor weighs against them and in favor of Kidd.

### iii.   The respondents have failed to show that the discovery sought by Kidd would circumvent Scottish proof-gathering restrictions.

The respondents contend that Kidd is using Section 1782 to circumvent a discovery limitation imposed by the Scottish court.  (Resp't Memo. of Law, ECF No. 9-1, p. 14.)  They claim, in substance, that the Scottish court ordered that discovery be phased, with "Phase One" discovery limited to documents relevant to certain of their defenses.[7]  They argue that Kidd should not be seeking discovery until that phase is completed – and that, if and when the time is right, he should pursue that discovery through Letters of Request from the Scottish court rather than through Section 1782.  (*Id.* at 1, 13–14.)  In response, Kidd argues that the Scottish discovery rules and guidelines do not prohibit the discovery he seeks, and that he had no obligation to seek Letters of Request before or instead of filing the Section 1782 application.  (*See* Pet.'s Memo. of Law, ECF No. 11, at 10–14.)  For the following reasons, the Court finds that the third *Intel* factor weighs in Kidd's favor.

"Proof-gathering restrictions" under the third *Intel* factor are rules that explicitly prohibit the discovery sought.  "Proof-gathering restrictions are best understood as rules akin to privileges that *prohibit* the acquisition or use of certain materials, rather than as rules that *fail to facilitate* investigation of claims by empowering parties to require their adversarial and non-party witnesses

---

[7]   The respondents contend that "Kidd already recovered for his alleged injuries" in his settlement with P&W.  (Resp't Memo. of Law, ECF No. 9-1, at 13.)   They also contend that his claims are time-barred.  (*Id.*)  They say that discovery in the Scottish proceeding is currently limited to "Kidd's production of his settlement agreement with P&W, along with Kidd's production of certain documents/materials that were previously produced in Kidd's initial lawsuit against P&W."  (*Id.*)

to provide information." *Mees*, 793 F.3d at 303 n.20 (emphasis in original) (internal quotations omitted). The information sought under Section 1782 need not be discoverable in the foreign country, so long as its discovery is not explicitly prohibited. "Our precedents expressly forbid district courts from considering the discoverability of evidence in a foreign proceeding when ruling on a § 1782 application." *In re O'Keeffe,* 650 F. App'x 83, 85 (2d Cir. 2016) (summary order). "Only where the materials being sought are privileged or otherwise prohibited from being discovered or used is the third *Intel* factor implicated." *In re Tiberius Grp. AG*, No. 19-MC-467 (VSB), 2020 WL 1140784, at *4 (S.D.N.Y. Mar. 6, 2020).

The respondents argue that because Kidd's time for taking discovery in Scotland has at least been postponed, the third *Intel* factor weighs in their favor. In support of their argument, they outline the current state of discovery in the Scottish proceeding. (*See* Resp'ts Memo. of Law, ECF No. 9-1, at 5–7.) The Scottish Court scheduled a preliminary hearing on February 28, 2020. (*Id.* at 5.) Before that hearing, the parties were to agree on a Joint Statement of Issues that needed to be determined. (*Id.*) All defendants agreed on a Joint Statement of Issues. (*Id.*) This Joint Statement, among other things, required Kidd to produce a copy of the Settlement Agreement between himself and P&W. (*Id.* at 5–6.) Kidd "did not try to agree to a Joint Statement of Issues and lodged his own." (*Id.* at 5.) In his Statement of Issues, Kidd did not identify any documents to be produced by the defendants. (*Id.* at 6.) He also did not argue for any discovery at the February 28 Preliminary Hearing. (*Id.*) After the Preliminary Hearing, the parties all agreed to Initial Procedure. (*Id.*) The Initial Procedure was agreed to and adopted by the Scottish Court. (*Id.*) According to the respondents, "it has been agreed by the parties that discovery in the Scottish Proceeding is currently limited to the Settlement Agreement between Kidd and P&W, and certain documents/materials already produced in Kidd's underlying lawsuit involving P&W." (*Id.* at 7.)

A "Debate" – essentially, an argument on a motion to dismiss – is scheduled to take place on June 23, 2020.  (*Id.*)  The Defendants "suspect the terms of the Settlement Agreement will be such that the Scottish Proceeding will be rendered incompetent (i.e. dismissed) . . . If the Court decides that the terms of the Settlement Agreement do not render the Scottish Proceeding incompetent, then any required discovery can be discussed/argued at that time under the applicable rules."  (*Id.*)

In other words, the respondents say that Kidd agreed not to pursue discovery in support of his claims until the Scottish court decides their forthcoming motion to dismiss – and they interpret his Section 1782 application as a "bad faith," "bait-and-switch" end run around his own agreement. (*See* Resp'ts Reply, ECF No. 12, at 4.)  But the Court is not persuaded that Kidd is attempting to escape the consequences of a deal made in Scotland.  In this regard, it is highly relevant that Kidd filed his Section 1782 application on February 20, 2020, over a week before the preliminary hearing before the Scottish Court. (Application, ECF No. 1; Resp'ts Memo. of Law, ECF No. 9-1, at 5.)  This supports his argument that he intended to "conduct discovery pursuant to Section 1782 in the U.S., while simultaneously advancing the Scottish Proceeding in accordance with applicable Scottish procedure."  (Pet.'s Memo. of Law, ECF No. 11, at 10.)

More importantly, an agreement to phase or delay discovery is not a "proof-gathering restriction" for Section 1782 purposes.  To say otherwise is to argue that Kidd must complete discovery in Scotland before he can begin it in the U.S.  The Second Circuit has explicitly refused to apply this type of "quasi-exhaustion" standard. "[A] district court may not refuse a request for discovery pursuant to § 1782 because a foreign tribunal has not yet had the opportunity to consider the discovery request.  Such a 'quasi-exhaustion requirement,' finds no support in the plain language of the statute and runs counter to its express purposes." *Metallgesellschaft*, 121 F.3d at 79 (internal citation omitted); *see also In re Tiberius Grp. AG*, 2020 WL 1140784, at *4 ("District

courts assessing a § 1782(a) application may not require an applicant to try and fail to obtain the discovery in the foreign court . . . .").  Since the Second Circuit has no exhaustion requirement, any inaction by Kidd in Scotland is irrelevant to the Court's Section 1782 determination.

For related reasons, the Court also disagrees with the respondents' argument that Kidd must seek Letters of Request from the Scottish court to avoid a charge that he is "circumventing a proof-gathering restriction."  (Resp'ts Memo. of Law, ECF No. 9-1, at 14) ("[T]he Court should direct Kidd to apply to the Scottish court for Letters of Request.").  As noted above, there is no requirement that the information the Kidd seeks under Section 1782 be discoverable in the Scottish proceeding.  *In re O'Keeffe,* 650 F. App'x at 85 ("Our precedents expressly forbid district courts from considering the discoverability of evidence in a foreign proceeding when ruling on a § 1782 application.").  Nor is there any requirement that Kidd exhaust his Scottish options before pursuing discovery under Section 1782.  *Metallgesellschaft*, 121 F.3d at 79.

The respondents have not shown that a Scottish "proof-gathering restriction" bars Kidd's discovery requests.  In the contemplation of Section 1782, "proof-gathering restrictions" are those rules – like the rules of attorney-client privilege – that affirmatively prohibit the discovery from being taken.  *Mees*, 793 F.3d at 303 n.20.  They do not include those rules that "*fail to facilitate* investigation of claims by empowering parties to require their adversarial and non-party witnesses to provide information."  *Id.* (emphasis in original).  The Court is unpersuaded that an agreement to phase discovery – or a rule that discovery-seeking parties must obtain leave of court – qualifies as a "proof-gathering restriction" under this framework.  Because the respondents have not shown that discovery would be barred under a Scottish rule akin to a privilege, the Court finds that the third *Intel* factor weighs against them and in favor of Kidd.

### iv.    On the record before the Court, the discovery sought is not overly intrusive, burdensome, or harassing.

The fourth *Intel* factor assesses whether the discovery request is "intrusive or burdensome." Courts evaluate whether a request is intrusive or burdensome through the lens of Rule 26 of the Federal Rules of Civil Procedure.  "[A] district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Id.* at 302.  If a discovery request is overbroad or intrusive, the preference is to closely tailor the discovery order instead of denying the discovery request entirely.  *Id.*  Under Rule 26(c), courts may issue protective orders "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. Pro. 26(c)(1).

The respondents argue that the discovery is overly burdensome – or should otherwise be quashed – for several reasons.  First, they contend that the discovery sought is impermissible "apex discovery" from high-level executives.  (Resp't Memo. of Law, ECF No. 9-1, at 10–11.)  Second, they complain that Kidd is requesting documents that they do not maintain in their individual capacities.   (*See id.* at 17 ("[A]ll of the documents requested are not maintained in [the respondent's] individual capacities."); *see also* Resp't Reply, ECF No. 12, at 3 ("Respondents do not have the documents that Applicant seeks—which encompass a laundry list of documents from all Lime Rock entities that potentially/allegedly in any way relate to the transaction at issue in the Scottish litigation.").)  Third, they generally assert that the subpoenas are overly broad and not sufficiently tailored to avoid undue expense and burden.  (Resp't Memo. of Law, ECF No. 9-1, at 17.)  Finally, they argue that the subpoenas "seek for Respondents to produce potentially privileged and/or confidential documents belonging to the Lime Rock Entities, which is not required by Rule 45 of the Federal Rules of Civil Procedure."  (*Id.*)  The Court finds that, for the

following reasons, the respondents have not shown that the discovery is burdensome enough to justify granting the Motion to Quash. The fourth *Intel* factor therefore weighs in Kidd's favor.

a. *Apex discovery*

The respondents argue that under the "apex doctrine," Kidd's subpoenas are overbroad and intrusive. They say that "Kidd's subpoenas to Reynolds and McCall represent improper apex-discovery that must be quashed by the Court." (Resp'ts Memo. of Law, ECF No. 9-1, at 12.) The respondents have alleged, and Kidd does not contest, that they hold high-level positions in Lime Rock and several of its associated entities. (Resp'ts Reply, ECF No. 12, at 3) ("Reynolds and McCall are both managing directors involved in the high-level day-to-day operations of their employer, Lime Rock Management."). They argue that Kidd has not met the "heightened burden" ordinarily required for obtaining discovery from high-level executives, and that he has failed to prove that they have unique first-hand knowledge of the claims at issue. (*Id.* at 5.)

Because of the possibility of business disruption and the potential for harassment, courts give special scrutiny to requests to depose high-ranking corporate officials. "Courts have granted protective orders for high-level executives where a party seeking to take a deposition had not yet attempted to obtain information from lower level executives, where high-level executives plainly had no knowledge of the facts, or where the deposition was solely sought to harass the executive." *Gen. Star Indem. Co. v. Platinum Indem. Ltd.*, 210 F.R.D. 80, 82–83 (S.D.N.Y. 2002) (internal citations omitted); *see also Rodriguez v. SLM Corp.*, No. 3:07-CV-1866 (WWE) (HBF), 2010 WL 1286989, at *2 (D. Conn. Mar. 26, 2010) (granting a protective order when the plaintiffs failed to show that the high-level executives "possess any information that could not be obtained from lower level employees or other sources, much less that they possess unique factual information and

institutional knowledge necessary to the prosecution of this case") (internal quotation marks omitted).

Yet while high-level executives can be protected from unnecessary depositions, they are not completely immune from being deposed. "Top corporate executives are not immune from discovery. The fact that an executive has a busy schedule cannot shield a witness from being deposed, though the likelihood of harassment and business disruption are factors to be considered in deciding whether to allow discovery of corporate executives." *Miller v. Nat'l Life Ins. Co.,* No. 3:07-CV-364 (PCD), 2008 WL 11377671, at *2 (D. Conn. Mar. 13, 2008). Though the respondents argue that the apex discovery doctrine automatically subjects Kidd to a higher burden, the "burden of persuasion in a motion to quash a subpoena and for a protective order is borne by the movant." *John Wiley & Sons, Inc. v. Doe Nos. 1-30,* 284 F.R.D. 185, 189 (S.D.N.Y. 2012) (quoting *Pegoraro v. Marrero,* No. 10 Civ. 00051(AJN) (KNF), 2012 WL 1948887, at *4 (S.D.N.Y. May 29, 2012)). !

The respondents argue that Kidd "has made no effort to show that Reynolds or McCall have unique personal knowledge of relevant facts or that he has exhausted less intrusive means to obtain the so-called 'critical' information and/or documents." (Resp'ts Memo. of Law, ECF No. 9-1, at 11.) Reynolds and McCall have also submitted nearly identical declarations, marked as Exhibits B and C, declaring that Kidd's application "contains no specific claims or allegations regarding what he believes is [their] specific connection to the claims he is making in the Scottish Proceeding." (Decl. of J. Reynolds, ECF No. 9-4, ¶ 7; Decl. of M. McCall, ECF No. 9-5, ¶ 7.) They both conclude that, unless Kidd gives them reason to believe that they have unique personal knowledge, they are "confident that there is nothing [they] can add beyond the discovery that he may conduct against the Lime Rock Entities in the Scottish Proceeding." (*Id.*) In response, Kidd

20

argues that the respondents could provide information about "the nature and extent of their own involvement in the Transaction and their own knowledge (or lack thereof) of P&W's conflict of interest." (Pet.'s Memo. of Law, ECF No. 11, at 18.)  Because of their "ubiquitous presence" at Lime Rock, Kidd believes the respondents are "uniquely positioned" to provide information about the corporate structures and chains of command at Lime Rock and its various entities. (*Id.* at 18, 21). Finally, Kidd argues that the respondents, due to their high-level positions, "should have been involved in the Transaction in a decision-making capacity, and in a way that other Lime Rock employees were not." (*Id.* at 21.)

Importantly, the respondents do not say that they lack personal knowledge about the ITS transaction.  They say only that *Kidd has not shown* that they know something *that he could not find out through discovery of Lime Rock in the Scottish case.*[8]  (Decl. of J. Reynolds, ECF No. 9-4, ¶ 7; Decl. of M. McCall, ECF No. 9-5, ¶ 7.)  In the Court's view, the respondents' qualifications take the case outside the paradigm in which depositions of senior executives are often quashed – particularly when coupled with the nature and size of the transaction.

The paradigmatic case of impermissible "apex" discovery is when a plaintiff seeks to depose a CEO who, in the ordinary course of the company's operations, obviously would not know anything about the case's subject matter.  In *Rodriguez*, for example, Judge Fitzsimmons quashed subpoenas that a student loan borrower served on two vice presidents of Sallie Mae, because there

---

[8]     At oral argument, the Court posed a "straight-up factual question" to the respondents' counsel: "Did this transaction cross these two gentlemen's desks?"  (Tr. of Oral Arg., ECF No. 14, at 11:6–8.)  Counsel responded that she had not reviewed all the documents that might bear on that question, but nevertheless offered that Reynolds and McCall "were not involved and did not participate in the negotiations of this transaction."  (*Id.* at 11:9–16.)  Kidd's counsel responded that "[t]hat's just, frankly, an impossibility . . . [b]ecause they were certainly involved in the transaction in their capacities as directors and officers of the entities that actually had to make the decision to invest."  (*Id.* at 27:9-19.)

was no reason to suppose that they had any "unique personal knowledge of Sallie Mae's origination and underwriting of the private student loans at issue in this action." 2010 WL 1286989, at *1–2. By contrast, when a CEO knows something about the transaction, motions to quash are often denied. In *General Star*, for example, the court denied a motion for a protective order barring the depositions of a corporation's chairman and vice chairman, in part because they failed to submit "affidavits swearing that they lack relevant knowledge." 210 F.R.D. at 83. When the case does not concern something as pedestrian as a single student loan, but instead concerns a significant corporate transaction that is likely to involve senior executives, "[a]s a matter of logic, a top executive . . . will likely have knowledge . . . that a subordinate will not." *Id.* at 84.

Here, Kidd is alleging that the Lime Rock entities conspired and committed fraud during a large corporate transaction, causing damages "in excess of $210 million . . . ." (Application, ECF No. 1, ¶¶ 2, 6.) Part of his claim depends on whether Lime Rock's corporate decision-makers were aware of the alleged fraudulent conduct. (*Id.* ¶ 56.) The Court does not find this case to be like *Rodriguez*, where the executives obviously knew nothing about the individual transaction at issue. Given the size and nature of the ITS transaction, it is a case where high-level corporate executives, such as the respondents, are *more* likely to have knowledge of the transaction, not less. The Court is persuaded by Kidd's argument that, as high-level executives of Lime Rock V's parent and general partner, the respondents' involvement in the transaction is sufficiently likely to support his subpoenas. And even if the respondents had unqualifiedly claimed to lack knowledge about the ITS transaction or the P&W conflict, Kidd would nevertheless be entitled to test that claim in a deposition. *E.g., Six W. Retail Acquisition*, 203 F.R.D. at 102 ("Even where . . . a high-ranking corporate officer denies personal knowledge of the issues at hand, this claim . . . is subject to testing by the examining party.") (internal quotation marks omitted, ellipses in original).

Finally, the respondents contend that Kidd should not be permitted to take their depositions until he has first deposed Ross and Smith in Scotland.  (Resp't Memo. of Law, ECF No. 9-1, at 12.)  And, to be sure, courts have sometimes quashed a top executive's deposition when he did not "possess any information that could not be obtained from lower level employees."  *E.g., Rodriguez*, 2010 WL 1286989, at *2.   Yet as Kidd points out, the respondents have not actually shown that Ross's and Smith's knowledge is coextensive with their own – and, in particular, they have not shown that Ross and Smith can testify on behalf of as many Lime Rock entities as Reynolds and McCall can.  For these reasons, the Court concludes that the "apex discovery" principle does not require the quashing of Kidd's subpoenas.

> b.   *Ownership and control of the subpoenaed documents*

The respondents object to Kidd's document production requests on the claimed ground that he is seeking Lime Rock's documents, not their own personal documents.  (Resp't Memo. of Law, ECF No. 9-1, at 16.)  They say that Kidd is "attempting to serve discovery on Reynolds and McCall as a conduit for the production of documents and/or materials from (or that belong to) the Lime Rock Entities."   (*Id.*)   They argue that "[a] party cannot serve a subpoena on an officer/employee of a company and command said individual to walk into his/her employer and copy documents belonging to (or maintained by) the company/entity." (*Id.* at 18.)  In response, Kidd argues that the subpoenas seek documents within the respondents' control, since they are corporate officers of the Lime Rock Entities and have the "legal right, authority, or practical ability" to obtain the documents.  (Pet.'s Memo. of Law, ECF No. 11, at 23.)

In other words, the parties dispute the scope of documents than can be subpoenaed from an individual executive in a case arising out of a corporate transaction.  The respondents say that a subpoena can encompass only those documents that they own or create in their personal

capacities and not as employees of Lime Rock, while Kidd says that it can encompass documents that they do not own but nevertheless have the "authority" or "practical ability" to obtain.  Under the circumstances present here, the Court agrees with Kidd.

Rule 45 of the Federal Rules of Civil Procedure governs subpoenas.   Under Rule 45(a)(1)(A)(iii), a subpoena may "command each person to whom it is directed to . . . produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control . . . ."  The definition of "custody or control" is both broad and practical, looking to whether the witness has the actual ability to obtain the information sought. "Regardless of the witness' legal relationship to a document, for the purposes of a Rule 45 subpoena, a document is within a witness's 'possession, custody, or control' if the witness has the practical ability to obtain the document."  *Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143, 147 (S.D.N.Y. 2011), *aff'd*, No. 10-CIV-9471 (WHP), 2011 WL 11562419 (S.D.N.Y. Nov. 14, 2011).

Courts in the Second Circuit have generally found that corporate officials have the "practical ability" to obtain documents from their corporations.  For example, in *In re Flag Telecom Holdings, Ltd. Securities Litigation*, a former senior executive was served with a subpoena.  236 F.R.D. 177, 180–81 (S.D.N.Y. 2006).  His former employer asserted that he could not produce the documents because the employee handbook prevented him from making copies of the documents and he, "as a corporate officer, does not necessarily control the corporation or its documents." *Id.*  The court held that the executive had control over the documents because as a senior executive and former party to the litigation, he "certainly has the practical ability to obtain the documents sought by plaintiffs' Request." *Id.*  The court also noted that, while the Employee Handbook and Code of Business Conduct indicated that the documents were the property of the company, "employees are permitted to utilize the documents in the course of employment, as they

must in order to perform their jobs, and therefore . . . a senior officer of the corporation in charge of strategic development, has the practical ability to obtain them." *Id.*; *see also U.S. v. Stein,* 488 F. Supp. 2d 350, 361 (S.D.N.Y. 2007) ("The term 'control' is broadly construed. These principles have been applied in a wide variety of situations.  Parent corporations have been compelled to produce documents in the hands of subsidiaries, subsidiaries documents in the hands of their parent entities . . . *corporate officers and directors documents in the hands of their corporations . . . .*" (emphasis added)); *U.S. v. Int'l Bus. Mach. Corp.,* 71 F.R.D. 88, 91 (S.D.N.Y. 1976) (noting that the president of a company "has control for employment purposes" over the company's documents and the fact that he had that control was "sufficient to require his compliance with the subpoena").

In this case, the respondents have not alleged that they have no "practical ability" to obtain the documents.  Instead, they vaguely state that "a party" cannot tell an "officer/employee" of a company to produce copies of the documents that "belong" to the company.  But under Rule 45, a party *can* ordinarily tell the officer of a company to produce otherwise-discoverable documents that the officer has the practical ability to obtain.  Because the respondents did not specifically set forth facts that established their lack of control over the documents, the subpoenas may not be quashed on that basis. *See, e.g.*, *U.S. v. Int'l Bus. Mach. Corp.*, 477 F. Supp. 698, 699 (S.D.N.Y. 1979) (denying a motion to quash when recipient "submitted no affidavit setting forth facts and circumstances which establish that the documents requested are not in [its] control").

    c.    *Overly broad and unduly burdensome*

The respondents generally assert that the subpoenas are both overly broad and unduly burdensome.  To assess whether Section 1782 aid should be denied on those grounds, the Court looks to the "familiar standards of Rule 26 of the Federal Rules of Civil Procedure."  *Mees*, 793 F.3d at 302.  Pursuant to Rule 26(b)(2)(C) of the Federal Rules of Civil Procedure, courts "must

limit the frequency or extent of discovery" that is otherwise allowed if "the discovery sought is unreasonably cumulative or duplicative," "can be obtained from some other source that is more convenient, less burdensome, or less expensive," or the "burden or expense of the proposed discovery outweighs its likely benefit . . . ."

In the Second Circuit, courts ordinarily disregard claims of overbreadth and undue burden unless they are supported by an affidavit or other proof.  "A party resisting discovery has the burden of showing 'specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, burdensome or oppressive . . . by submitting affidavits or offering evidence revealing the nature of the burden.'"  *Pegoraro v. Marrero*, 281 F.R.D. 122, 128–29 (S.D.N.Y. 2012) (quoting *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42 (S.D.N.Y. 1984)).  "[G]eneral and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information."  *N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*, 325 F.R.D. 36, 48 (E.D.N.Y. 2018) (quoting *Lindsey v. Butler*, No. 11 CIV. 9102, 2017 WL 4157362, at *3 (S.D.N.Y. Sept. 18, 2017).

In this case, the respondents have not supported their claim of burden with an affidavit. They allege that each of Kidd's document production requests "is overly broad, unduly burdensome, and is not reasonably tailored to avoid imposing undue burden and expense on Respondents."  (Resp't's Memo. of Law, ECF No. 9-1, at 18–25.)  But they do not explain exactly what burdens compliance would entail, and accordingly the Court can only regard these allegations as "general and conclusory objections" insufficient to avoid discovery.  "[A] party objecting to a discovery request on the grounds that the information sought is unduly burdensome must go beyond the familiar litany that requests are burdensome, oppressive or overly broad and submit

affidavits or other evidence revealing the nature of the burden." *See Schiavone v. Northeast Utils. Serv. Co.*, No. 3:08-cv-00429 (AWT) (DFM), 2010 WL 382537, at *1 (D. Conn. Jan. 27, 2010). The declarations submitted by Reynolds and McCall only object to the location of the depositions. (*See* Decl. of J. Reynolds, ECF No. 9-4, ¶ 5; Decl. of M. McCall, ECF No. 9-5, ¶ 5.)  They say nothing about the burden and expense that would flow from complying with the document production component of the subpoenas.

        *d.*    *Privileged materials*

The respondents argue that the subpoenas "seek for Respondents to produce potentially privileged and/or confidential documents belonging to the Lime Rock Entities."  (Resp't's Memo. of Law, ECF No. 9-1, at 17.)  Rule 45 of the Federal Rules of Civil Procedure permits the Court to "quash or modify the subpoena if it . . . . requires disclosure of privileged or other protected matter and no exception or waiver applies."  Fed. R. Civ. P. 45.  The party claiming the privilege has the burden of establishing the essential elements of the privilege.  *U.S. v. Constr. Prods. Research,* 73 F.3d 464, 473 (2d Cir. 1996).  Furthermore, Rule 45 requires that the party claiming a privilege prepare a log detailing "the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim."  Fed. R. Civ. P. 45(d)(2); *see also* D. Conn. L. Civ. R. 26(e).

Because the respondents have not submitted a privilege log, they have not met their burden of proving that any of the requested documents are privileged.  "An essential step in meeting the burden of establishing the existence of a privilege or an immunity from discovery is the production of an adequately detailed privilege log sufficient to enable the demanding party to contest the claim."  *Horace Mann Ins. Co. v. Nationwide Mut. Ins. Co.,* 240 F.R.D. 44, 47 (D. Conn. 2007) (internal quotation marks omitted).  The production of a privilege log is mandated by both the

Federal Rules of Civil Procedure and the Local Civil Rules for the District of Connecticut.  *See*

Fed. R. Civ. P. 26(b)(5)(A); D. Conn. L. Civ. R. 26(e) ("In accordance with Fed. R. Civ. P. 26(b),

when a claim of privilege or work product protection is asserted in response to a discovery request

for documents or electronically stored information, the party asserting the privilege or

protection shall serve on all parties a privilege log.").

  The respondents have not met their burden to show that Kidd's subpoenas are "unduly

intrusive or burdensome," *Intel*, 542 U.S. at 264-65, or that the subpoenas seek privileged material.

Because they have not, the fourth *Intel* factor breaks in Kidd's favor.  And because the other three

factors favor him as well, the Court will exercise its discretion to grant discovery.  *Schmitz*, 376

F.3d at 83-84.

### IV. <u>Conclusion</u>

  In conclusion, the Court addresses two other issues – the first of which is the respondents'

technical objections to the subpoenas.  The respondents once contended that the subpoenas had

not been validly served because the marshal had not attached the document schedules or tendered

the witness fee.  (Resp'ts Memo. of Law, ECF No. 9-1, at 15–16.)  At oral argument, however,

they conceded that all of their objections had been cured except one.  (Tr. of Oral Arg., ECF No.

14, at 14:4–14:14.)  They continue to object to being deposed in New York City (*id.*), but the Court

observes nothing improper in deposing a Westport resident in Manhattan.  *See* Fed. R. Civ. P.

45(c)(1)(A) (subpoenas may command attendance "within 100 miles of where the person resides,

is employed, or regularly transacts business in person."); *see also* MapQuest, www.mapquest.com

(last visited May 11, 2020) (confirming that Westport and New York City are 52 miles apart).  In

any event the Court trusts that the parties will work cooperatively to schedule the depositions in a

28

way that minimizes needless inconvenience to the witnesses and appropriately accounts for pandemic-related safety concerns.

Finally, the Court addresses the scope of its ruling with respect to the document production component of the subpoenas.  At oral argument, the respondents urged that if the Court did not quash the subpoenas in their entirety, it nevertheless "greatly reduce the scope" of the document requests "because they are overburdensome."  (Tr. of Oral Arg., ECF No. 14, at 38:23–39:4.)  And to be sure, the Court of Appeals ordinarily prefers to see district courts "closely tailor the discovery order" when necessary to avoid overbreadth and undue intrusion.  *Mees*, 793 F.3d at 302.  In this case, however, the respondents have not made the evidentiary showing that would entitle them to invoke this principle.  As noted above, they have not submitted an affidavit by which the Court could conclude that any particular document production request is unduly burdensome.  The Court will therefore direct them to comply with all of Kidd's document production requests.

For the foregoing reasons, the respondent's **Motion to Quash** (**ECF No. 9**) is **DENIED.** Within twenty-one days of this ruling, the respondents shall produce all documents that are both (a) responsive to Kidd's subpoenas and (b) within their "possession, custody or control," to include any responsive document that they have the "authority" or "practical ability" to obtain.  If either respondent withholds any document under a claim of privilege or work product protection, he shall log that document on a privilege log that complies with D. Conn. Local Civil Rule 26(e).

This is not a Recommended Ruling but a Ruling on Discovery, the standard of review of which is specified in 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Rule 72.2 of the Local Rules for United States Magistrate Judges.  *See In re Hulley Enterps. Ltd.,* 400 F. Supp. 3d 62, 71 (S.D.N.Y. 2019) (holding that § 1782 motions are procedural and "rulings on § 1782 applications are not dispositive . . . .") (emphasis in original). As such, it is an order of the Court unless reversed or

modified by a District Judge upon timely made objection. *See* 28 U.S.C. § 636(b) (written objections to ruling must be filed within fourteen calendar days after service of same); Fed. R. Civ. P. 6(a), 6(d) & 72; D. Conn. L. Mag. R. 72.2; *Caidor v. Onondaga Cnty*, 517 F.3d 601, 603–05 (2d Cir. 2008) (failure to file timely objection to Magistrate Judge's discovery ruling waives appellate review).

SO ORDERED at Hartford, Connecticut this 12th day of May, 2020.

*/s/ Thomas O. Farrish*

Hon. Thomas O. Farrish
United States Magistrate Judge