### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| In Re Application of Robert Gordon Kidd for an Order Pursuant to 28 U.S.C. § 1782 to Take Discovery from John Thomas Reynolds and Mark McCall | No. 3:20-mc-00016 (KAD)<br><br><br><br>June 5, 2020 |

### MEMORANDUM OF DECISION
### RE: RESPONDENTS' EMERGENCY MOTION TO STAY (ECF NO. 26)

Kari A. Dooley, United States District Judge:

Pending before the Court is the objection of Respondents John Thomas Reynolds ("Reynolds") and Mark McCall ("McCall" and, collectively, the "Respondents") to Magistrate Judge Farrish's May 12, 2020 order (the "Ruling," ECF No. 18) denying Respondents' motion to quash the subpoenas duces tecum served on Respondents by Petitioner Robert Gordon Kidd ("Kidd" or the "Petitioner"). The subpoenas were served on Respondents following Judge Farrish's grant of Petitioner's *ex parte* application for discovery pursuant to 28 U.S.C. § 1782 to obtain documents and testimony for use in a proceeding currently pending before the Scotland Court of Session (the "Scottish proceeding"). In denying Respondents' motion to quash, Judge Farrish ordered Respondents to "produce all documents that are both (a) responsive to Kidd's subpoenas and (b) within their 'possession, custody or control,' to include any responsive document that they have the 'authority' or 'practical ability' to obtain" within twenty-one days. (Ruling at 29.) Judge Farrish subsequently extended Respondents' compliance date to June 8, 2020. (*See* ECF No. 30.) Respondents have filed an emergency motion for a stay pending this

Court's decision on the objection (ECF No. 26), to which Petitioner has filed an opposition (ECF No. 34) and to which the Respondents have filed a reply (ECF No. 41).  For the reasons that follow, the motion to stay is GRANTED pending the outcome of the Court's decision on Respondents' objection.

**Background and Procedural History**

Petitioner is the plaintiff in the Scottish proceeding, which arises out of Petitioner's sale of his minority interest in an industrial services company incorporated by Petitioner in Scotland, ITS Tubular Services (Holdings) Limited ("ITS"), to a private equity fund called Lime Rock V Partners, LP ("Lime Rock V"), which is affiliated with various other Lime Rock entities around the globe, referred to collectively as "Lime Rock." (*See* Pet'r's Mem. ISO *Ex Parte* App. ¶¶ 1–2, 9, ECF No. 1-1.)  According to Petitioner, he and ITS were represented in the sale (*i.e.*, the "Transaction") by the law firm Paull & Williamsons LLP ("P&W"), which, unbeknownst to Petitioner, also served as longtime corporate counsel to Lime Rock and served as "unofficial counsel" to Lime Rock in connection with the Transaction.  (*Id.* ¶¶ 3–4.)  Petitioner alleges that Lime Rock V and certain of its employees aided P&W in its breach of its fiduciary duty to Petitioner and ultimately caused the Transaction to consummate on terms unfavorable to Petitioner, depriving him of his control of ITS and causing him to suffer damages exceeding $210 million.  (*Id.* ¶¶ 5–6, 27–30.)  Following settlement of a separate lawsuit against P&W (*see id.* ¶¶ 31, 34), Petitioner initiated the Scottish proceeding, which names, *inter alia*, Lime Rock V and certain other Lime Rock entities and officers as defendants (referred to therein as "defenders"). (*See id.* ¶¶ 12–16.)

Respondents are both managing directors and limited partners of Lime Rock Management LP ("LRM LP") and related entities and both work out of Lime Rock's Westport, Connecticut

offices.  (*Id.* ¶¶ 10, 47; *see also* Reynolds Decl. ¶¶ 2–3, ECF No. 9-4; McCall Decl. ¶¶ 2–3, ECF No. 9-5.)  Although not named as defenders in the Scottish proceeding, Petitioner alleges that Respondents are in possession of information that is key to that proceeding by virtue of their positions with "(i) the Cayman Island entities that controlled Lime Rock V . . . and (ii) the management companies that advised Lime Rock V in connection with the Transaction."  (Pet'r's Mem. ISO *Ex Parte* App. ¶ 40.)  Specifically, Petitioner asserts that Lime Rock V can only act through its general partner, which is an entity called Lime Rock Partners GP V, LP, which in turn can only act through its general partner, an entity called LRP GP V, Inc., for which Reynolds and McCall served as a director and chief financial officer/secretary, respectively.  (*Id.* ¶ 43; *see also* Hume Decl. ¶¶ 4–5, ECF No. 1-3.)  Petitioner also alleges that LRM LP advised Lime Rock V in connection with the Transaction, in addition to an entity called LRM LLP that is indirectly controlled by McCall.  (Pet'r's Mem. ISO *Ex Parte* App. ¶¶ 46, 48.)  In short, Petitioner's claimed need for discovery from Respondents arises from their role as "officers, directors, or indirect controlling parties" for the entities that advised Lime Rock V and are responsible for the Transaction.  (*Id.* ¶ 49.)

On February 28, 2020, Magistrate Judge Farrish issued a ruling granting Petitioner's application for discovery pursuant to 28 U.S.C. § 1782.  (ECF No. 6.)  Judge Farrish found the statutory prerequisites satisfied[1] and further determined that all of the discretionary "*Intel* factors" counseled in favor of granting the application.  Specifically, these non-exclusive factors ask:

> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which event "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad";

---

[1] The statute requires that: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign or international tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Sampedro v. Silver Point Capital, L.P.*, 958 F.3d 140, 143 (2d Cir. 2020) (quoting *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015)).

(2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";

(3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and

(4) whether the request is "unduly intrusive or burdensome."

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244 (2d Cir. 2018), *cert. denied sub nom. Kiobel ex rel. Samkalden v. Cravath, Swaine & Moore LLP*, 139 S. Ct. 852 (2019) (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004)).  Because the application was submitted and ruled upon on an *ex parte* basis, Judge Farrish indicated that Respondents could seek relief pursuant to Fed. R. Civ. P. 26 if they sought to challenge the subpoenas.  Thereafter, Respondents moved to quash the subpoenas pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure.  (ECF No. 9.)

Respondents did not dispute that Petitioner had satisfied Section 1782's three statutory requirements.  Instead Respondents argued, citing the *Intel* factors, that the subpoenas were unduly burdensome because Petitioner sought inappropriately to depose Respondents as high-level executives in contravention of the apex doctrine and because the materials sought should be obtained from the corporate entities involved in the Scottish proceeding, not from Respondents as individuals.  (*See* Res'p.s' Mem. ISO Mot. to Quash, ECF No. 9-1.)  Respondents further argued that Petitioner sought to use Section 1782 to circumvent the discovery limitations of the Scottish proceeding, and that the discovery was not appropriate because Respondents were effectively participants in the Scottish proceeding.

In denying the motion to quash, Judge Farrish rejected these arguments and found that all four *Intel* factors favored Petitioner.  First, Judge Farrish determined that the fact that Respondents

are not participants in the Scottish proceeding favors Petitioner's entitlement to discovery. However, even accepting Respondents' argument that Reynolds and McCall were acting through the Lime Rock entities and thus should effectively be deemed participants in the Scottish proceeding, Judge Farrish nonetheless rejected the notion that the first *Intel* factor favored Respondents because they failed to show that the evidence Petitioner sought was available through Scottish legal processes. (*See* Ruling at 10–11.) Second, Judge Farrish held that Respondents failed to show that the Scottish tribunal would be unreceptive to the evidence sought by Petitioner—citing the absence of "authoritative proof that the Scottish court would reject the Section 1782 discovery." (*Id.* at 14.) Third, Judge Farrish rejected Respondents' assertions that the subpoenas reflected Petitioner's effort to circumvent proof-gathering restrictions in Scotland given the status of the Scottish proceeding. He recognized that the Scottish court ordered that discovery be phased and that Kidd had agreed to the "Initial Procedure" so limiting initial discovery, but noted that Kidd filed his Section 1782 application before these limitations were in place, undermining any claim that the petition was undertaken to avoid the parameters of the Scottish proceeding. (*Id.* at 14–16.) Judge Farrish further found that "an agreement to phase or delay discovery is not a 'proof-gathering restriction' for Section 1782 purposes" in any event. (*Id.* at 16.)

Finally, Judge Farrish concluded that the discovery sought was not overly intrusive or burdensome when viewed through the lens of Fed. R. Civ. P. 26. In so ruling he rejected Respondents' argument that the apex doctrine barred Petitioner from deposing Respondents given Petitioner's allegations regarding Respondents' personal knowledge of the events concerning the Transaction, and given that the size and scope of the Transaction tended to support and not negate the likelihood of Respondents' involvement in the Transaction as high level officers. (*See id.* at

21–22.)  Judge Farrish further found that Respondents had not demonstrated that the documents sought by Petitioner were outside of their custody and control so as to warrant quashing the subpoenas under Fed. R. Civ. P. 45.  (*Id*. at 25.)  Nor did he accept Respondents' assertions regarding undue burden and overbreadth when these claims were unsupported by an affidavit, and where Respondents failed to support their request in the alternative for more tailored discovery with an evidentiary showing.  (*Id*. at 26, 29.)  As noted previously, Respondents filed an objection to the ruling (ECF No. 35) after Judge Farrish granted their request to extend the timeframe to do so pursuant to Fed. R. Civ. P. 72 (ECF Nos. 21, 22).

**Standard of Review**

"The decision whether to issue a stay is firmly within a district court's discretion, and in balancing the relevant factors the basic goal is to avoid prejudice."  *In re Frontier Commc'ns Corp. Derivative Litig.*, No. 3:17-CV-1792 (VAB), 2018 WL 3553332, at *6 (D. Conn. July 23, 2018) (quotation marks and citation omitted).  "The fact that the issuance of a stay is left to the court's discretion 'does not mean that no legal standard governs that discretion . . . . A motion to a court's discretion is a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles.'"  *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005)) (brackets and internal quotation marks omitted).

> [T]hose legal principles have been distilled into consideration of four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id*. (quotation marks and citation omitted); *see also S.E.C. v. Citigroup Glob. Markets Inc.*, 673 F.3d 158, 162 (2d Cir. 2012) (*per curiam*) (applying same factors in determining whether to stay district court proceedings pending disposition on appeal).  The first two considerations "are the

6

most critical": the movant must show more than mere possibilities of both likely success and irreparable injury. *Nken*, 556 U.S. at 434.

**Discussion**

Respondents focus principally and appropriately on the first two factors that the Court must consider in deciding whether to stay compliance with the subpoenas pending a decision on the objection. As to the first factor, Respondents have raised a plausible argument that Judge Farrish misapplied Second Circuit precedent regarding the first *Intel* factor when he determined that it favored Petitioner. Respondents point out that "when the real party from whom documents are sought . . . is involved in foreign proceedings, the first *Intel* factor counsels against granting a Section 1782 petition." *Kiobel*, 895 F.3d at 245. Respondents contend that the Lime Rock entities, which are named as defenders in the Scottish proceeding, are the real parties from whom Petitioner seeks discovery. They assert that they do not possess any materials responsive to Petitioner's requests that are not the property of their employers—*i.e.*, the Lime Rock entities. (Reynolds Decl. ¶ 4; McCall Decl. ¶ 4.) While acknowledging this case law, Judge Farrish nonetheless held that Respondents could not successfully invoke it absent an additional showing by the Respondents that Petitioner could procure the evidence through Scottish legal processes. (*See* Ruling at 10.) The imposition of this additional burden on Respondents does not appear to be countenanced by Second Circuit precedent when assessing the first *Intel* factor. While no single *Intel* factor is dispositive, the Court is at least attuned to substantial questions regarding the merits of Judge Farrish's ruling that warrant more careful consideration. *See Doe v. Trump Corp.*, No. 18-CV-9936 (LGS), 2020 WL 2538400, at *2 (S.D.N.Y. May 18, 2020) ("To demonstrate a 'strong showing that it is likely to succeed on the merits,' a party must demonstrate 'a *substantial*

*possibility*, although less than a likelihood, of success' on appeal") (quoting *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002)).[2]  The first factor thus favors Respondents.

As to the second factor, "a requirement to produce documents, at least absent a claim of privilege or sensitivity, is not generally the type of injury that is irreparable."  *Id.* at *5 (quoting *In re Platinum Partners Value Arbitrage Fund LP*, No. 18-CV-5176 (DLC), 2018 WL 3207119, at *6 (S.D.N.Y. June 29, 2018)); *see also In re Noguer*, No. 18-MC-498 (JMF), 2019 WL 1034190, at *4 (S.D.N.Y. Mar. 5, 2019) ("The mere fact that information, once disclosed, cannot be 'undisclosed' is therefore not enough by itself to warrant a finding of irreparable harm"). However, the "the probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury [Respondents] will suffer absent the stay," and here the Court finds a sufficiently high possibility of success so as to "excuse" a lesser showing of harm.  *United States v. New York City Bd. of Educ.*, 620 F. Supp. 2d 413, 416 (E.D.N.Y. 2009) (quoting *Mohammed*, 309 F.3d at 101) (brackets omitted).  In addition to the concerns discussed above, Respondents have identified the subpoenas' facial overbreadth as another factor to which Judge Farrish may have paid inadequate heed in assessing the fourth *Intel* factor, which looks to Federal Rules of Civil Procedure 26 and 45 in assessing undue burden.  *See, e.g.*, *In re Gushlak*, No. 11-MC-218 (NGG), 2011 WL 3651268, at *6 (E.D.N.Y. Aug. 17, 2011), *aff'd sub nom. Gushlak v. Gushlak*, 486 Fed. Appx. 215 (2d Cir. 2012).  While Judge Farrish declined to entertain Respondents' assertion of overbreadth absent a supporting affidavit, courts do have discretion to limit discovery based upon a finding of facial overbreadth, as was asserted by Respondents here. *See, e.g.*, *Consolmagno v. Hosp. of St. Raphael Sch. of Nurse Anesthesia*, No. 3:11-CV-00109 (DJS), 2015 WL 13799929, at *4 (D. Conn. Dec. 9, 2015) (granting in part and denying in part

---

[2] The question of Respondents' ultimate likelihood of success remains somewhat elusive given that the Court has had less than two days' opportunity to review the parties' extensive submissions.

motion to quash based upon, *inter alia*, document requests which demonstrated "that the subpoena is overbroad on its face"); *Gropper v. David Ellis Real Estate, L.P.*, No. 13-CV-2068 (ALC) (JCF), 2014 WL 518234, at *4–5 (S.D.N.Y. Feb. 10, 2014) (agreeing with defendant that "many of the plaintiff's discovery demands are objectionable on their face" despite the defendant's failure to offer more than conclusory boilerplate objections, and issuing protocol for the parties to resolve their dispute).

Given the likelihood that Respondents may be entitled to an order at least narrowing the scope of Petitioner's discovery requests, and given their representation that they are in the process of reviewing nearly 27,000 responsive documents (*see* Clements Decl. ¶¶ 4–6, ECF No. 26-2), the Court finds that the substantial possibility of Respondents' success militates in favor of a stay, notwithstanding that the burdens identified are typical to those that accrue under any obligation to produce discovery consistent with Section 1782. *See also First City, Texas-Houston, N.A. v. Rafidain Bank*, 131 F. Supp. 2d 540, 543 (S.D.N.Y. 2001) (finding that the defendant "will suffer irreparable harm unless a stay of the discovery sought by the 1998 Subpoenas is granted, since it will then be obligated, in order to purge its contempt, to provide the very discovery it argues it has no obligation to produce").

As to the third factor, the Petitioner represents that he needs the documents in advance of a June 16, 2020 procedural hearing targeted to outlining the issues that will be adjudicated at a June 23-25, 2020 substantive debate in the Scottish proceeding.  (*See* Kerr Decl. ¶¶ 19–20, ECF No. 34-1).  Respondents refute this contention and assert that the debate will focus only on whether Petitioner has articulated a cognizable legal theory and will not involve the review of any evidence. (*See* Garioch Decl. ¶ 6, ECF No. 26-3.)  If Petitioner's case is not dismissed at this stage, it will be set for trial, and Respondents contend that Petitioner will thus be entitled to discovery at that

time.  (*Id.* ¶ 9.)  Petitioner claims that there is no rule of Scottish procedure limiting discovery prior to the setting of a trial date; he asserts that obtaining Respondents' document production will enable him to ascertain whether to amend his pleading, in which case any facts included in an amendment will be accepted as true for purposes of the debate.  (Kerr Decl. ¶¶ 17, 23.)

While Petitioner has demonstrated that he may suffer some prejudice if he does not receive the documents in advance of the debate, given the relative nascency of the Scottish proceeding, the Court is not convinced that such prejudice could not be remedied if, ultimately, the documents are produced to him.  Moreover, a stay in this case would simply "maintain the status quo existing prior to the district court's order" and thus not generate an "appreciable harm."  *S.E.C.*, 673 F.3d at 168.  In addition, it is the Court's intention to issue a ruling on Respondents' objection promptly, thus obviating any prejudice that might ensue from a lengthy stay.[3]

Finally, "[a]s a private business dispute, the action does not give rise to a public interest in the lawsuit" at step four of the analysis.  *Doe*, 2020 WL 2538400, at *6; *Starke v. SquareTrade, Inc.*, No. 16-CV-7036 (NGG) (SJB), 2017 WL 11504834, at *3 (E.D.N.Y. Dec. 15, 2017) (same).

**Conclusion**

For the foregoing reasons, Respondents' motion to stay pending resolution of this Court's ruling on Respondents' objection to the ruling denying the motion to quash is GRANTED.

**SO ORDERED** at Bridgeport, Connecticut, this 5th day of June 2020.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

---

[3] Respondents represent that the objection "will be fully briefed by June 16."  (Res'p.s' Reply ISO Mot. to Stay at 1.) The genesis of this understanding is unclear.  Neither this Court's Local Rules, nor Fed. R. Civ. P. 72, contemplate additional briefing beyond the filing of the objection.  The issues were thoroughly briefed previously and the Court can and will consider all of the briefs submitted.